## WASHINGTONIAN PUBLISHING CO. *v.* PEARSON ET AL.

No. 222. Argued December 6, 1938.—Decided January 30, 1939.

*Mr. Horace S. Whitman,* with whom *Mr. Gibbs L. Baker* was on the brief, for petitioner.

*Mr. Eliot C. Lovett,* with whom *Mr. Elisha Hanson* was on the brief, for respondents.

Mr. Justice McReynolds delivered the opinion of the Court.

By this suit, instituted in the District of Columbia, March 8, 1933, petitioner seeks an injunction, damages, etc., because of alleged unauthorized use of a magazine article copyrighted under Act March 4, 1909 (Ch. 320, 35 Stat. 1075; U. S. C., Title 17). Pertinent portions of the statute are in the margin.[1] *Bobbs-Merrill Co.* v. *Straus,*

---

[1] Act March 4, 1909—

"Sec. 1. That any person entitled thereto, upon complying with the provisions of this Act, shall have the exclusive right:

"(a) To print, reprint, publish, copy, and vend the copyrighted work; . . .

"Sec. 3. That the copyright provided by this Act shall protect all the copyrightable component parts of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this Act.

"Sec. 4. That the works for which copyright may be secured under this Act shall include all the writings of an author.

"Sec. 9. That any person entitled thereto by this Act may secure copyright for his work by publication thereof with the notice of copyright required by this Act; and such notice shall be affixed to

210 U. S. 339, 346; *Caliga* v. *Inter Ocean Newspaper Co.,* 215 U. S. 182, 188.

The trial court sustained petitioner's claim and directed ascertainment of profits, damages, etc. The Court of Appeals ruled that, as copies of the magazine had not been *promptly* deposited in the Copyright Office as directed by

each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, . . .

"Sec. 10. That such person may obtain registration of his claim to copyright by complying with the provisions of this Act, including the deposit of copies, and upon such compliance the register of copyrights shall issue to him the certificate provided for in section fifty-five of this Act.

"Sec. 12. That after copyright has been secured by publication of the work with the notice of copyright as provided in section nine of this Act, there shall be promptly deposited in the copyright office or in the mail addressed to the register of copyrights, Washington, District of Columbia, two complete copies of the best edition thereof then published, . . . No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this Act with respect to the deposit of copies and registration of such work shall have been complied with.

"Sec. 13. That should the copies called for by section twelve of this Act not be promptly deposited as herein provided, the register of copyrights may at any time after the publication of the work, upon actual notice, require the proprietor of the copyright to deposit them, and after the said demand shall have been made, in default of the deposit of copies of the work within three months from any part of the United States, except an outlying territorial possession of the United States, or within six months from any outlying territorial possession of the United States, or from any foreign country, the proprietor of the copyright shall be liable to a fine of one hundred dollars and to pay to the Library of Congress twice the amount of the retail price of the best edition of the work, and the copyright shall become void.

"Sec. 18. That the notice of copyright required by section nine of this Act shall consist either of the word "Copyright" or the abbreviation "Copr.", accompanied by the name of the copyright proprietor, and if the work be a printed literary, musical, or dramatic work, the

§ 12, the action could not be maintained. It accordingly reversed the decree of the trial court and remanded the cause.

The record discloses—

December 10, 1931, petitioner published an issue of "The Washingtonian," a monthly magazine, and claimed

notice shall include also the year in which the copyright was secured by publication. . . .

"Sec. 20.. That where the copyright proprietor has sought to comply with the provisions of this Act with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright or prevent recovery for infringement against any person who, after actual notice of the copyright, begins an undertaking to infringe it, . . .

"Sec. 23. That the copyright secured by this Act shall endure for twenty-eight years from the date of first publication, whether the copyrighted work bears the author's true name or is published anonymously or under an assumed name: *Provided*, That in the case of any posthumous work or of any periodical, cyclopedic, or other composite work upon which the copyright was originally secured by the proprietor thereof, or of any work copyrighted by a corporate body (otherwise than as assignee or licensee of the individual author) or by an employer for whom such work is made for hire, the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright: *And provided further*, That in the case of any other copyrighted work, including a contribution by an individual author to a periodical or to a cyclopedic or other composite work when such contribution has been separately registered, the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term, of copyright: *And provided further*, That in default of the registration of such application for renewal and ex-

copyright by printing thereon the required statutory no-tice.   Fourteen months later, February 21, 1933, copies were first deposited in the Copyright Office and a certifi-cate of registration secured.   This suit followed, March 8, 1933.

tension, the copyright in any work shall determine at the expiration of twenty-eight years from first publication.

"Sec. 24. That the copyright subsisting in any work at the time when this Act goes into effect may, at the expiration of the term provided for under existing law, be renewed and extended by the author of such work if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then by the author's executors, or in the absence of a will, his next of kin, for a further period such that the entire term shall be equal to that secured by this Act, includ-ing the renewal period: *Provided, however,* That if the work be a composite work upon which copyright was originally secured by the proprietor thereof, then such proprietor shall be entitled to the privi-lege of renewal and extension granted under this section: *Provided,* That application for such renewal and extension shall be made to the copyright office and duly registered therein within one year prior to the expiration of the existing term.

"Sec. 25. That if any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

"(a) To an injunction restraining such infringement;

"(b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, . . .

"Sec. 27. That the proceedings for an injunction, damages, and profits, and those for the seizure of infringing copies, plates, molds, matrices, and so forth, aforementioned, may be united in one action.

"Sec. 54. That the register of copyrights shall provide and keep such record books in the copyright office as are required to carry out the provisions of this Act, and whenever deposit has been made in the copyright office of a copy of any work under the provisions of this Act he shall make entry thereof.

"Sec. 55. That in the case of each entry the person recorded as the claimant of the copyright shall be entitled to a certificate of registration under seal of the copyright office, to contain his name and address,

In August, 1932, Liveright, Inc., published and offered for general sale a book written by two of the respondents and printed · by another, which contained material substantially identical with an article contained in The Washingtonian of December, 1931. The usual notice claimed copyright of this book. August 26, 1932, copies were deposited in the Copyright Office and certificate of registration issued.

Respondents concede that petitioner secured upon publication a valid copyright of The Washingtonian. But they insist that although prompt deposit of copies is not prerequisite to copyright, no action can be maintained

---

. . . Said certificate shall be admitted in any court as prima facie evidence of the facts stated therein. In addition to such certificate the register of copyrights shall furnish, upon request, without additional fee, a receipt for the copies of the work deposited to complete the registration.

"Sec. 59. That of the articles deposited in the copyright office under the provisions of the copyright laws of the United States or of this Act, the Librarian of Congress shall determine what books and other articles shall be transferred to the permanent collections of the Library of Congress, including the law library, and what other books or articles shall be placed in the reserve collections of the Library of Congress for sale or exchange, or be transferred to other governmental libraries in the District of Columbia for use therein.

"Sec. 60. That of any articles undisposed of as above provided, together with all titles and correspondence relating thereto, the Librarian of Congress and the register of copyrights jointly shall, at suitable intervals, determine what of these received during any period of years it is desirable or useful to preserve in the permanent files of the copyright office, and, after due notice as hereinafter provided, may within their discretion cause the remaining articles and other things to be destroyed: . . .

"Sec. 62. That in the interpretation and construction of this Act 'the date of publication' shall in the case of a work of which copies are reproduced for sale or distribution be held to be the earliest date when copies of the first authorized edition were placed on sale, sold, or publicly distributed by the proprietor of the copyright or under his authority, and the word 'author' shall include an employer in the case of works made for hire."

because of infringement prior in date to a tardy deposit. Counsel assert—"The very foundation of the right to maintain an action for infringement is deposit of copies and registration of the work. Neither of these has the slightest bearing upon the creation of the copyright itself under Section 9. That is obtained merely by publication with notice as required by the Act." Also, "If copies were not deposited promptly after publication the opportunity to comply with the requirement of promptness was gone forever as to that particular work."

Petitioner submits that under the statute *prompt* deposit of copies is not prerequisite to an action for infringement; and that under the facts here disclosed deposit before suit was enough.

The Act of 1909 is a complete revision of the copyright laws, different from the earlier Act both in scheme and language. It introduced many changes and was intended definitely to grant valuable, enforceable rights to authors, publishers, etc., without burdensome requirements; "to afford greater encouragement to the production of literary works of lasting benefit to the world." [2]

---

[2] See Act of March 3, 1891, Ch. 565, 26 Stat. 1106; *Goubaud* v. *Wallace* (1877), 36 Law Times (N. S.) 704, 705; 25 W. R. 604; *Cate* v. *Devon & Exeter Constitutional Newspaper Co.* (1889), L. R. 40 Ch. D. 500, 37 W. R. 487, 58 L. J. Ch. 288, 60 L. T. 672, 5 T. L. R. 229; *Lumiere* v. *Pathé Exchange* (1921), 275 F. 428; *Mittenthal* v. *Berlin* (1923), 291 F. 714.

· Also Report of House Committee on Patents, February 22, 1909 (No. 2222). Among other things this says—

"Sections 12 and 13 deal with the deposit of copies, and should be considered together. They materially alter the existing law, which provides that in order to make the copyright valid there must be deposited two complete copies of the book or other article not later than the date of first publication. The failure of a shipping clerk to see that the copies go promptly forward to Washington may destroy a copyright of great value, and many copyrights have been lost because by some accident or mistake this requirement was not complied with. The committee felt that some modification of

Under the old Act deposit of the work was essential to the existence of copyright. This requirement caused serious difficulties and unfortunate losses. (See H. R. Report, note 2, *supra.*) The present statute (§ 9) declares—"Any person entitled thereto by this Act may secure copyright for his work by publication thereof with the notice of copyright required by this Act [§ 18]; . . ." And respondents rightly say "It is no longer necessary to deposit anything to secure a copyright of a published work, but only to publish with the notice of copyright."

Section 10 declares—

"That such person may obtain registration of his claim to copyright by complying with the provisions of this

---

this drastic provision, under which the delay of a single day might destroy a coypright, might well be made. The bill reported by the committee provides that there shall be 'promptly' deposited in the copyright office, or in the mail addressed to the register of copyrights, two complete copies of the best edition then published, and that no action or proceeding shall be maintained for the infringement of copyright in any work until the provisions with respect to the deposit of copies and the registration of such work shall have been complied with.

"If the works are not promptly deposited, we provide that the register of copyrights may at any time after publication of the work, upon actual notice, require the proprietor of the copyright to deposit, and then in default of deposit of copies of the work within three months from any part of the United States, except an outlying territorial possession of the United States, or within six months from any outlying territorial possession of the United States, or from any foreign country, the proprietor of the copyright shall be liable to a fine of $100 and to pay to the Library of Congress twice the amount of the retail price of the best edition of the work, and the copyright shall become void. It was suggested that the forfeiture of the copyright for failure to deposit copies was too drastic a remedy, but your committee feel that in many cases it will be the only effective remedy: certainly the provision for compelling the deposit of copies by the imposition of a fine would be absolutely unavailing should the copyright proprietor be the citizen or subject of a foreign state."

Act, including the deposit of copies, and upon such compliance the register of copyrights shall issue to him the certificate provided for in section fifty-five of this Act."

Section 12—

"That after copyright has been secured by publication of the work with the notice of copyright as provided in section nine of this Act, there shall be promptly deposited in the copyright office or in the mail addressed to the register of copyrights, Washington, District of Columbia, two complete copies of the best edition thereof then published, . . .   No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this Act with respect to the deposit of copies and registration of such work shall have been complied with."

Section 13—

"That should the copies called for by section twelve of this Act not be promptly deposited as herein provided, the register of copyrights may at any time after the publication of the work, upon actual notice, require the proprietor of the copyright to deposit them, and after the said demand shall have been made, in default of the deposit of copies of the work within three months from any part of the United States, . . . the proprietor of the copyright shall be liable to a fine of one hundred dollars and to pay to the Library of Congress twice the amount of the retail price of the best edition of the work, and the copyright shall become void."

Sections 59 and 60 were new legislation.  They show clearly enough that deposit of copies is not required primarily in order to insure a complete, permanent collection of all copyrighted works open to the public.  Deposited copies may be distributed or destroyed under the direction of the Librarian [3] and this is incompatible with

---

[3] See Report Register Copyrights for 1938.  During the year there were 166,248 registrations; 194,433 current articles deposited were

the notion that copies are now required in order that the subject matter of protected works may always be available for information and to prevent unconscious infringement.

Although immediately upon publication of The Washingtonian for December, 1931, petitioner secured copyright of the articles therein, respondents maintain that through failure promptly to deposit copies in the Copyright Office the right to sue for infringement was lost. In effect, that the provision in § 12 relative to suits should be treated as though it contained the words "promptly," also "unless" instead of "until," and read— No action or proceeding shall be maintained for infringement of copyright in any work *unless* the provisions of this Act with respect to the deposit of copies *promptly* and registration of such work shall have been complied with.

Plausible arguments in support of this view were advanced by the Court of Appeals. We think, however, its adoption would not square with the words actually used in the statute, would cause conflict with its general purpose, and in practice produce unfortunate consequences. We cannot accept it.

Petitioner's claim of copyright came to fruition immediately upon publication. Without further notice it was good against all the world. Its value depended upon the possibility of enforcement.

The use of the word "until" in § 12 rather than "unless" indicates that mere delay in making deposit of copies was not enough to cause forfeiture of the right theretofore distinctly granted.

Section 12 provides "That after copyright has been secured by publication of the work with the notice of

transferred to the Library of Congress. Also 3,612 motion picture films, and 43,302 deposits from other classes were returned to the authors or proprietors.

copyright as provided in section nine of this Act, there shall be promptly deposited in the copyright office" two copies, etc. The Act nowhere defines "promptly," and to make the continued existence of copyright depend upon promptness would lead to unfortunate uncertainty and confusion. The great number of copyrights annually obtained is indicated by note 3, *supra*. The difficulties consequent upon the former requirement of deposit before publication are pointed out in the Committee Report. These would be enlarged if whenever effort is made to vindicate a copyright it would become necesary to show deposits were made promptly after publication especially since there is no definition of "promptly."

Section 13 authorizes the register of copyrights to give notice if he finds undue delay and to require deposit of copies. Upon failure to comply within three months the proprietor shall be subject to a fine and the copyright shall become void. Evidently mere delay does not necessarily invalidate the copyright; its existence for three months after actual notice is recognized. Without right of vindication a copyright is valueless. It would be going too far to infer that tardiness alone destroys something valuable both to proprietor and the public.

Section 20 saves the copyright notwithstanding omission of notice; § 23 declares "That the copyright secured by this Act shall endure for twenty-eight years from the date of first publication, whether the copyrighted work bears the author's true name or is published anonymously or under an assumed name: . . ." Furthermore, proper publication gives notice to all the world that immediate copyright exists. One charged with such notice is not injured by mere failure to deposit copies. The duty not to infringe is unaffected thereby. A certificate of registration provided for by § 55 apparently may be ob-

tained at any time and becomes evidence of the facts stated therein.

Sections 23 and 24, which permit renewal of a copyright by application and registration within its last year although the deposited copyrighted publication may have been disposed of under §§ 59–60, give clear indication that the requirement for deposit is not for the purpose of a permanent record of copyrighted publications and that such record is not indispensable to the existence of the copyright.[4]

The penalty for delay clearly specified in § 13 is adequate for punishment of delinquents and to enforce contributions of desirable books to the Library. To give § 12 a more drastic effect would tend to defeat the broad purpose of the enactment. The Report of the Congressional Committee points out that forfeiture after notice

---

[4] For Statement of the views of the Copyright Office concerning Act of 1909 and practice thereunder, see Letter from the Register of Copyrights to the Librarian of Congress dated September 17, 1938, printed at the Government Printing Office 1938. The following appears therein—(p. 20)

"The failure to make deposit within the proper time does not in itself invalidate the copyright which has already been secured by publication with notice; this can now result only after failure to make deposit upon actual notice as provided in Section 13.

"It is true that Section 12 provides that no action or proceeding shall be maintained for infringement until the 'deposit of copies and registration' have taken place, which presumably was added as a special inducement to make prompt deposit; but this does not answer the question.

"Heretofore, the practice of the office has been to accept copies at any time subsequent to publication with notice; thus, in effect, attaching no significance to the word 'promptly'; and certain decisions of the courts seem to sanction the practice . . .

"It seems very desirable to remove this doubt and uncertainty by eliminating the word 'promptly' from Section 12, leaving Section 13 as heretofore to take care of any delinquent. . . ."

and three months' further delay was thought too severe by some. Nowhere does it suggest approval of the much more drastic result now insisted upon by respondents.

Read together as the Committee which reported the bill said they should be, §§ 12 and 13 show, we think, the Congress intended that prompt deposit when deemed necessary should be enforced through actual notice by the register; also that while no action can be maintained before copies are actually deposited, mere delay will not destroy the right to sue. Such forfeitures are never to be inferred from doubtful language.

This view is in accord with the interpretation of somewhat similar provisions of the English Copyright Act. *Goubaud* v. *Wallace* and *Cate* v. *Devon Constitutional Newspaper Co., supra.* Also with the conclusions reached in *Lumiere* v. *Pathé Exchange* and *Mittenthal* v. *Berlin, supra.*

The challenged decree must be reversed. The cause will be remanded to the District Court.

*Reversed.*

Mr. Justice Black, dissenting.

The opening words of the 1909 copyright law,[1] under which petitioner here claims, grant the privilege of copyright only to those who have complied "with the provisions of this Act." The provisions of that 1909 Act, of the first copyright Act of 1790,[2] and of every copyright Act. passed since 1790, have required that copies of a copyrighted article be delivered to a designated governmental depository. Until today, this Court has never permitted recovery for infringement of a copyright unless the statutory requirement for deposit had been complied with in the manner and within the time required by the govern-

---

[1] 35 Stat. 1075.
[2] 1 Stat. 124, 125.

ing copyright statute. The 1909 Act—governing the present case—requires that "after copyright has been secured by publication of the work with the notice of copyright as provided in Section nine of this Act, there shall be *promptly* deposited in the copyright office or in the mail addressed to the register of copyrights, . . . two complete copies of the best edition thereof then published, . . ." (Italics supplied.)

It is admitted that petitioner did not comply with the statute by prompt deposit of two copies of its work. Fourteen months elapsed between the date of publication and the date of deposit. Petitioner's asserted monopoly rights rest solely on the statute [3] and petitioner disobeyed the statute's requirements. Notwithstanding this disobedience, petitioner is here permitted to collect damages under the statute, even for alleged infringement committed in the fourteen month period during which the statute's express command was continuously disregarded by petitioner. This century and a half old statutory requirement for public deposit of a copyrighted article provided a public record for the public's benefit. It imposes a simple and easily performed duty—not burdensome in any respect—in return for a twenty-eight year monopoly, with right of renewal for twenty-eight more years. To permit recovery here protects the copyright owner's statutory privilege of monopoly, but emasculates the statutory provisions designed—for over a century and a half—to protect the public.

The judgment here rests upon the conclusions: (1) that the statute grants a copyright from the date of first publication with notice; (2) that after deposits are made the statute permits a retroactive recovery for public use

---

[3] *Banks* v. *Manchester*, 128 U. S. 244; *Caliga* v. *Inter Ocean Newspaper Co.*, 215 U. S. 182, 188; *Bobbs-Merrill Co.* v. *Straus*, 210 U. S. 339, 346; *Globe Newspaper Co.* v. *Walker*, 210 U. S. 356, 367.

of an article of which copies were never promptly deposited as required by the statute; (3) that § 13 provides an exclusive penalty for failure to make the deposit; and (4) that—according to administrative interpretation of the Act—deposits are not essential. These conclusions are not in harmony with the historic policy of the copyright law.

*First.* There is no novelty in the requirement of the Act of 1909 that deposit of copies shall be made after the copyright has already been secured. Every copyright Act, including the original Act of 1790, provided for a copyright interest which (as in the 1909 Act) vested prior to the time by which the last deposit was required. True the 1909 Act grants a copyright upon first publication, that is, before the date on which deposit is required. But all of the previous Acts granted a copyright interest "from the [time of] recording the title" of an article, and recording always took place before the date by which the last deposits were required.[4] And while a copyright interest under the Acts prior to that of 1909—as in that Act—thus vested before the last deposits were required,

---

[4] Section 4 of the first Act of 1790, 1 Stat. 124, 125, required the last deposit of one copy of the copyrighted article "within six months after the publishing thereof . . ."; § 4 of the Act of 1831, 4 Stat. 436, 437, required the last deposit to be made "within three months from the publication . . ."; § 10 of the Act of 1846, 9 Stat. 102, 106, required the last deposits to be made "within three months from the publication . . ."; § 2 of the Act of 1865, 13 Stat. 540, required the last deposit to be made "within one month of the date of publication . . ."; the Act of 1867, 14 Stat. 395, required deposit "within one month after publication . . ."; § 93 of the Act of 1870, 16 Stat. 213, required the last deposits "within ten days after . . . publication . . ."; Revised Statutes of 1878, § 4956, required deposit "within ten days from the publication . . ."; § 3 of the Act of 1891, 26 Stat. 1106, required deposit "not later than the day of the publication . . ."; § 12 of the Act of 1909, 35 Stat. 1078, provides that "after copyright . . . , there shall be promptly deposited . . ."

this Court uniformly held that under these Acts "conditions subsequent" providing for deposits were actually "conditions precedent" to the perfection of the copyright. Construing the requirement of deposits in the Acts of 1790 and 1802, this Court said: "The answer is, that this is not a technical grant of precedent and subsequent conditions. *All the conditions are important;* the law requires them to be performed; *and, consequently, their performance is essential to a perfect title. On the performance of a part of them, the right vests;* and this was essential to its protection under the statute; *but other acts are to be done, unless congress have legislated in vain, to render the right perfect."* (Italics supplied.)[5]

The 1831 Act was also construed by this Court as follows: "Although, under § 6 of the . . . act, the exclusive right to the *copyright vests upon the recording of the title to the book,* and runs for the prescribed period from that date, and although the right of action for infringement, under § 6, also accrues at that time, yet it is quite clear, that, under § 4, in respect at least to suits brought after three months from the publication of the book, [within which the 1831 Act required deposit] it must be shown, as a condition precedent to the right to maintain the suit, that a copy of the book was delivered to the clerk of the District Court within three months from the publication. . . . Undoubtedly, *the three conditions* prescribed by the statute, namely, the deposit before publication of the printed copy of the title of the book, the giving of information of the copyright by the insertion of the notice on the title-page or the next page, and the depositing of a copy of the book within three months after the publication, *are conditions prece-*

---

[5] *Wheaton & Donaldson* v. *Peters & Grigg,* 8 Peters 591, 665.

*dent to the perfection of the copyright."* (Italics supplied.)[6]

*Second.* All copyright laws before 1891 had required deposit within some designated period after publication. The Act of 1891, however, required deposit "not later than the date of [first] publication." The Joint Committee on the bill which became the 1909 Act considered this requirement too drastic because "the delay of a single day" (after publication) in making the deposit "might destroy a copyright." Instead of requiring deposit within a fixed number of days, or by the date of publication, the bill as reported, and the 1909 Act as passed, permitted a copyright to be perfected by a "prompt deposit" after publication. The Committee did not recommend, nor did Congress provide that copyright could be perfected without deposit; the Committee did recommend, and Congress enacted an extension of the time for deposit.

In considering what Congress meant by continuing in the 1909 revision of the copyright laws the requirement for the deposit of copies, "we must look to the origin and source of the expression and the judicial construction put upon it before the enactment in question was passed." [7] Prior to the 1909 Act this Court had construed provisions for deposit as essential requirements to the perfection of copyright, whether considered as conditions precedent or subsequent.[8] The Committee reporting the 1909 Act pointed out that "Under existing law [the 1891 Act] the filing of title and deposit of copies on or before the date of first publication are *conditions precedent,* and any failure to comply with them works a forfeiture of

---

[6] *Callaghan* v. *Myers,* 128 U. S. 617, 651, 652; cf. *Merrell* v. *Tice,* 104 U. S. 557; *Thompson* v. *Hubbard,* 131 U. S. 123, 150.

[7] *Kepner* v. *United States,* 195 U. S. 100, 121.

[8] See notes 5, 6, *supra.*

the copyright. It is proposed under this bill to so change this as to have the copyright effective upon the publication with notice, and the other formalities become *conditions subsequent.*" [9]

"A condition precedent is one which must happen or be performed before the estate to which it is annexed can vest" or which must be performed "before some right dependent thereon accrues." [10] A "condition subsequent is one annexed to an estate already vested, . . . and by the failure or non-performance of which it is defeated." [11]

It is clear that Congress intended that the requirement as to deposits must be complied with in order to perfect the copyright interest under the 1909 Act. Any other construction runs counter to the policy of the copyright law and rewards disobedience to plain statutory provisions.

Only compelling language could justify the conclusion that Congress intended to abandon a statutory policy—in effect since 1790—which required owners of patent or copyright monopolies to disclose upon the public records the extent of their claimed monopolies. Under the prevailing judgment here, public deposit and public registration are no longer necessary in order to obtain rights under the copyright law. And without deposit and registration, there need be no public disclosure of the day or the year of publication (by which copyright is obtained) of many copyrighted works. Under § 18— the only mandatory provision for public disclosure now left unimpaired—many types of copyright will be obtained merely by marking publications with the name of the proprietor and the word "Copyright", "Copyr.", or

---

[9] House Rep. No. 2222, 60th Cong., 2nd Sess., p. 10.
[10] Black's Law Dictionary, 3rd Ed., West Publishing Co., 1933
[11] *Id.*

"C". Hereafter, there need be no public (or even private) record of the beginning and the ending of many of these monopolies. And it is unreasonable to assume that an owner of a copyright will voluntarily make the extent and limitations of his monopoly more public than the law requires. Congress did not intend to enshroud copyright monopolies in such secrecy (See §§ 16, 23, 55, 62). . If disobedience of the statutory requirement is to be rewarded, the reward should certainly be limited—as the Court of Appeals held—so that a deposit which does not comply with the law could not be given retroactive operation permitting recovery of damages for public use during the period of disobedience.

*Third.* Section 12 of the 1909 Act—requiring registration and prompt deposit, after publication, of two complete copies of the best edition of a copyrighted article— provides that no action or proceeding shall be maintained for copyright infringement until the required copies are deposited and the article registered with the register of copyrights. Under § 13, if the copies are not promptly deposited after publication, the register of copyrights may demand deposit by the proprietor. If deposit is not then made within three months, the proprietor is liable to a fine of $100.00 and payment to the Library of Congress of twice the amount of the retail price of the best edition of the article, and the copyright becomes void for all purposes. It is suggested that § 13 provides the sole and exclusive penalty for failure to comply with the statutory requirement of prompt deposit of copies. But this ignores one of the two distinct purposes of Congress in requiring deposits of copies in the 1909 Act and in all preceding copyright Acts. First, the deposit is intended to record publicly full and complete information about a work for which copyright is claimed and to make that work continuously available for public

inspection in order that the extent and boundaries of the monopoly may be understood by the public at all times during the life of the copyright. The judgment here renders this primary Congressional purpose ineffective. Second, Congress intended to preserve "desirable or useful"[12] works in a governmental agency dedicated to the diffusion of public knowledge. In furtherance of this second purpose the Act of 1909,—as did other Acts since 1846—required copies to be deposited with the Library of Congress. These two separate and distinct purposes have been manifested by Congress sometimes in different sections of a single copyright statute and at other times in separate Acts.

To effectuate the first purpose, that is, to notify the public of the existence and extent of a copyright monopoly, the first Act of 1790 required deposit, public recording and registration in a District Court, and publication in a newspaper; the Act of 1831 required deposit with the Clerk of a District Court (without penalty for failure to deposit); the Act of 1870 required deposit of one copy of the title with the Librarian of Congress *before* publication and two copies of the article within ten days after publication without provision for money penalty for failure to comply; § 4956 of the Revised Statutes (1878) required deposit of one copy of the title *before* publication and two copies of the work after publication. Deposit has served as an integral part of every legislative plan to give the public full information of copyright monopolies. These plans have included deposits, registration, notice on the copyrighted article itself and full publication in newspapers. Deposit, registration and notice on the article—which every prior copyright Act required—are specifically provided for in the 1909 Act.

---

[12] § 60, Act of 1909.

50

To effectuate the second purpose, that is, to preserve worthy works for the diffusion of knowledge, the Act of 1790 made separate provision for delivery of an additional copy to the Secretary of State "to be preserved in his office "; in a non-copyright Act of 1846, (9 Stat. 102, 106) creating the Smithsonian Institute "for the diffusion of knowledge," Congress required deposit of separate copies with the Institute and with the Library of Congress; a special Act of 1865 (13 Stat. 540, the origin of § 13 now considered) permitted a separate copy to be franked to the Library of Congress within a month of publication "for the use of said Library," gave the Librarian the right to demand this additional copy, and penalized non-compliance with his demand by forfeiture of copyright; § 93 of the Act of 1870 required two additional copies of the best edition to be delivered, within ten days after publication, to the Librarian of Congress, and (§ 94) "in default of such deposit" which was required for the benefit of the Library, a penalty of $25.00 could be collected by the Librarian of Congress; § 4959 of the Revised Statutes (1878) required deposit of two additional separate copies of the best edition "within ten days from publication" with the Librarian of Congress, and § 4960 extended the penalty of $25.00 to cover all failures to make deposits of copies.

Section 12 of the Act of 1909, following the provisions of the Act of 1891 (26 Stat. 1106) provided in a single section for deposit of copies with the Librarian both for notice to the public and for use of the Library. Section 13 of the 1909 Act now provides in a single section—as had § 4960 of the Revised Statutes—a penalty for failure to make deposits which are required for the two purposes of notice to the public and use by the Library. Neither this § 13 nor any of its legislative predecessors indicated a Congressional intent to abandon—as a con-

dition to the perfection of a copyright—the requirement of deposits for the salutary purpose of providing adequate public records of the existence and continuing extent of copyright monopolies. Section 13 gives the Librarian of Congress authority to demand deposit of copies of every article on which copyright is claimed, adding an additional penalty for failure to comply with his demand. This additional penalty may be imposed whether the claimed copyright is valid or invalid, and does not nullify the mandatory provision of § 12 requiring deposit of copies for the public benefit.

Section 12 itself provides that "no action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this Act with respect to the deposit of copies and registration of such work shall have been complied with." Compliance with "the provisions of this Act" is made a condition of the right to sue, and the Act is not complied with by delaying fourteen months after publication before making deposit. The Act requires "prompt deposit."

It is said that two new sections (59 and 60) of the 1909 Act indicate an intention of Congress to abandon the protective mandate for public record of copyright monopolies. These sections show a contrary purpose and distinctly mark the line between deposits for Library uses and deposits for public information.

Section 59 permits the Librarian of Congress acting alone to transfer deposited copies to other governmental libraries for their use. Since 1909, acting under this authority, the Librarian has distributed 186,037 volumes.[13]

---

[13] The books were distributed to the Departments of Agriculture, Commerce, Navy, Treasury, Education; and to the Federal Trade Commission, Bureau of Standards, Army Medical Library, Walter Reed Hospital, Engineer School, Corps of Engineers, Soldiers' Home, District of Columbia Library and others. Annual Report, Register of Copyrights, 1938, p. 4.

Section 60 permits the Librarian (supervising both the Library and Copyright offices) acting jointly with the Register of Copyrights, (directly in charge of deposits for copyright purposes) to determine what deposits "received during *any period of years* it is desirable or useful to preserve in the *permanent files of the Copyright Office . . .*" (Italics supplied.) After duly published notice to the public, and "specific notice to the copyright proprietor of record" other articles can be destroyed or returned to the proprietor "of record." But even as to articles destroyed or returned, public records of the copyright monopolies must be retained in the registration files (§§ 10, 11, 16, 45, 47, 53, 54, 55) and in the indices or catalogues (§ 56). All these records "shall be open to public inspection." (§ 58). And—among other purposes—these records remain open to public inspection, in the event of a copyright renewal.

During the last forty-one years copyright registrations numbered over five million, and "have increased over fivefold." [14] In 1909, it was obviously necessary to enact legislation providing for disposal of some of the multitudinous accumulated copyrighted articles no longer necessary for the purpose of public disclosure. But far from showing a Congressional intent to permit copyright monopolies with no public governmental record available for public inspection, §§ 59 and 60 are the clearest and most conclusive evidence of a contrary purpose. They carried forward and emphasized once more the dual statutory purpose to require deposits for the use of the Library, and to preserve for the public the historic and wise policy that the ownership, nature and extent of private monopolies granted by government should always be spread upon government records open for public inspection.

*Fourth.* There remains the suggestion that administrative interpretation of the 1909 Act lends support to

---

[14] Annual Report, Register of Copyrights, 1938, p. 1.

the judgment here under which the statutory provisions for public registration and deposit are nullified. On the contrary, the rules and regulations promulgated by the Register of Copyrights under the 1909 Act have continuously and consistently recognized that registration and deposit are mandatory. From the first (1910) until the latest (1927) edition of these rules and regulations they have substantially provided as follows:

"*Promptly* after first publication of the work with the copyright notice inscribed, two complete copies of the best edition of the work then published *must be sent* to the Copyright Office, with the proper application for registration correctly filled out and a money order for the amount of the legal fee.

"The statute requires that the deposit of the copyright work shall be made 'promptly' which has been defined as 'without unnecessary delay.' It is not essential, however, that the deposit be made on the very day of publication." (Italics supplied.)[15]

But it is said that a letter from the Register of Copyrights to the Librarian of Congress—dated September 17, 1938—indicates a different interpretation of the Act by the Copyright Office. However, this letter does not purport to change the formal rules and regulations—in force and effect since 1910—which provide that deposit and registration "must" be "promptly" made. The 1909 Act gives the Register of Copyrights authority to promulgate rules and regulations but it does not give him authority to alter the law's meaning by communicating with the Librarian of Congress. Nor, in fact, does this letter represent an effort by the Register of Copyrights to change the rules and regulations dating from 1910. Practitioners in the Copyright Office, as well as the public generally,

---

[15] Rules and Regulations of the Copyright Office, Bulletin No. 15, 1927. The word "promptly" was inserted in the first paragraph for the first time in 1917.

rely upon formal rules and regulations made available to the public. But whether they have access to interdepartmental communications such as the letter does not appear.

This interdepartmental communication bears the date of September 17, 1938. It appeared in public form for the first time January 4, 1939. Its appearance thus occurred nearly six years after the complaint in this suit was filed; more than eight months after the Circuit Court of Appeals decided that the statutory provisions for deposit were mandatory; almost three months after this Court granted certiorari; and twenty-nine days after the cause was argued and submitted for final decision by this Court. The communication is admittedly contrary to the only two court decisions which it cites on the precise question of the effect of failure to make deposit.[16] It does not represent an administrative practice consistently pursued, or an administrative interpretation of long standing, and therefore is not entitled to any weight in the construction of the 1909 Act. The administrative rules and regulations—to which we may look—have since 1910 consistently required that deposit "must" be made.

It is of far greater importance to the public today than it was in 1790, 1831, 1870, or 1891, that public record be made of copyright monopolies granted to further the arts and sciences, since these privileges have been extended by statute to include almost every conceivable type of production of the human mind.[17] It has been well

---

[16] Opinion of the court below; *Ebeling & Reuss, Inc.* v. *Raff*, unofficially reported, 28 United States Patent Quarterly, 366, (E. D., Penn.).

[17] The Act of 1909 as amended, 17 U. S. C., § 5, lists the following classes of works in which copyright may be claimed: Books, including composite and cyclopedic works, directories, gazetteers, and other compilations; Periodicals, including newspapers; Lectures, sermons, addresses (prepared for oral delivery); Dramatic or dramatico-

said that the "general rule of law is, that the noblest of human productions—knowledge, truths ascertained, conceptions, and ideas—become, after voluntary communication to others, free as the air to common use." [18] All voluntary communications become "free as the air to common use" unless protected by compliance with the copyright statutes. More than twenty-five years ago (1911) a careful and accurate survey of the copyright laws led to the conclusion that "For seventy-five years it has been the settled law of this country that protection under the copyright law is granted only to those who perform the conditions essential to a perfect copyright title." [19] No decision of this Court—previous to that of today—has questioned the consistent purpose of Congress to require "that the public should have notice, by a true and correct official registry, as to the real author or proprietor entitled to the enjoyment of such monopoly as against the public." [20] To grant monopoly privileges—by judicial construction—to those who fail to comply with statutory safeguards intended to protect the public against abuses of such privileges conflicts with statutory policy extending back to the beginning of the nation's history. An author is entitled to the benefit of every right afforded by copyright law, but only "upon complying with the provisions of" that law. Congress has provided for a grant of monopoly privileges under

---

musical compositions; Musical compositions; Maps; Works of art; models or designs for works of art; Reproductions of a work of art; Drawings or plastic works of a scientific or technical character; Photographs; Prints and pictorial illustrations; Motion-picture photoplays; Motion pictures other than photoplays.

[18] Brandeis, J., dissenting, *International News Service* v. *Associated Press*, 248 U. S. 215, 250.

[19] *Louis Dejonge & Co.* v. *Breuker & Kessler Co.*, 191 F. 35, 36; aff'd, 235 U. S. 33.

[20] *Koppel* v. *Downing*, 11 App. D. C. 93, 104.

copyright for a term which may extend by renewal to fifty-six years for those who do comply. Petitioner having conceded that it disobeyed a plain requirement of the Act designed to inform and protect the public, I cannot agree that it should recover damages under the very law it admittedly disobeyed.

MR. JUSTICE ROBERTS and MR. JUSTICE REED concur in this dissent.