**PRIMCOT FABRICS, DEPARTMENT OF
PRISMATIC FABRICS, INC.,
Plaintiff,**

v.

**KLEINFAB CORPORATION, Defendant.**

**No. 73 Civ. 4589.**

United States District Court,
S. D. New York.

Jan. 8, 1974.

Ruben Schwartz & Silverberg, New York City, for plaintiff.

Harold W. Grubart, New York City, for defendant.

GURFEIN, District Judge:

This is an action for an injunction to restrain the defendant from printing and selling copies of a printed textile fabric in several colors known as "pattern No. 850" or "Romeo", which is the subject of a design copyright, Certificate of Registration No. H 51204 owned by the plaintiff. P.Ex. 1.[1] The claim for relief is based on 17 U.S.C. § 112, and jurisdiction is based on 28 U.S.C. § 1338(a). This a motion for a preliminary injunction. An evidentiary hearing was held. Both plaintiff and defendant are textile converters who print patterns on the greige goods.

The print is composed of eight squares, each square containing a distinctive design in a different color with a background of varying colors. These colors are largely primary colors, sometimes known as calico colors. The print is a patch plaid design.

Plaintiff's Exhibit 2 is a print made by the defendant which gives the impression of being the print of the plaintiff. It has certain small differences, such as a non-linear setup of the boxes, tint of the background, and perhaps some variance in size of the squares. A lay observer, however, would find that the two prints essentially are the same.

The purported history of the respective prints was developed at the trial by

---

1. Printing of the design and its distribution began in September, 1971 with the copyright shown on the selvage of the fabric, but the statutory copyright for the design was not filed until June, 1973. Defendant began its distribution in September, 1972, though it claims to have created the design in the Spring of 1971.

witnesses. The plaintiff's witnesses were a textile designer, Donald Alter, who testified that in August of 1971 he was commissioned by Larry Schreiber of Primcot Fabrics to create a design from a patchwork quilt which Schreiber gave him. He had a painting created on special paper used for reproduction in the screening process. He selected the colors to be applied and contends that he saw to it that the squares were mathematically proper for a textile design. His painting on paper went to Pageland Screen Printing Company in Pageland, South Carolina, where it was to be made into printed fabrics.

The Merchandise Manager of Pageland Screen Printing Company, Louis Cantor, also testified on behalf of the plaintiff that he was in charge of the plant in September 1971, and that he had then been directed to produce a patchwork quilt fabric. He was given a painting on a piece of paper, which he had engraved and printed under his personal supervision because of the complicated nature of the color scheme. His firm prepared the screen by turning the printing over to an engraver. The copyright was printed on the selvage. He testified that it was possible that the copyright had been omitted on some of the goods, but, in that event, the instructions were to separate such non-copyright bearing material for sale abroad. Mr. Cantor also testified that in his experience multi-colored prints of this kind could be copied by a photographic process. The copyright legend on the instructions for printing given to Pageland read "Copyright legend to read as follows: 'Copyright Primcot Fabrics.'" The instructions were given by the Acadia Company which is the parent of Primcot Fabrics, Inc., a wholly-owned subsidiary. "Primcot" is a nom-de-plume used for copyright purposes.

The defendant's witnesses gave a different version of the origin of their print, Exhibit 2. Bertram Klein, the President of Kleinfab Corporation, a textile converter for the bedspread, curtain and home furnishings industries, testified that the origin of Exhibit 2 was as follows. He had purchased from a sample fabric house two pieces of French fabric of a patchwork nature. Exhibits E and F. He engaged a freelance artist named Barbara Mather in the Spring of 1971 to make a painting that would be adequate for the screen printing of a design utilizing features of the French fabric. He testified that he received a bill on April 15, 1971 for $150 from Mrs. Mather for the patchwork design. Mr. Klein testified that he did not order the painting to be used for printing a fabric until September 1972, although he had distributed it earlier among his customers for their approval. In his version, the creation of the design did not derive from the print design of the plaintiff, which he contended he had never seen. His creation, he contends, predated the plaintiff's creation of its design. Mrs. Mather testified in support of Mr. Klein, stating that the only bill she had ever rendered for a patchwork design was a bill dated April 15, 1971. She testified that Mr. Klein had given her two French fabrics, that she had traced certain of the designs in the squares on a piece of paper and had supplied the color scheme. She conceded that the colors in plaintiff's Exhibit 1 were, with some variations in tint, the same as those contained in plaintiff's Exhibit 2 and that the same colors assigned to particular design squares on Exhibit 1 were applied to the same design squares on Exhibit 2. In her words, "they match color for color in the same layout." She did not deny that there was one design square on *both* plaintiff's Exhibits 1 and 2 which did not come from the French fabrics at all. The identity of this extra square in common to both exhibits obviously tended to indicate that her copying was not from the French fabrics but from Exhibit 2. She could not explain the presence of the additional common design, except to recall that she received, in addition to the two French fabrics, a necktie worn by a salesman. She thought that this necktie must have contained

the additional design. Neither the necktie nor its owner were produced. Nor did Mr. Klein testify that anything was copied from a tie. She could not explain how it happened that even if she copied the designs from the French fabrics, both she and the designer of Exhibit 1 happened to put the same colors into the same designs, square by square. She said that it was a coincidence.

The defendant brought an expert in the textile printing business, Stanley Stone, to testify on its behalf. Mr. Stone conceded that to have the colors on precisely the same squares, both as to background and the figure part of the design, was an extraordinary coincidence.

I am compelled to find that the almost identical color scheme applied in similar hue to the same design squares, plus the existence of an additional design square on both exhibits which did not appear in the French fabrics, makes a strong case for a finding of copying. Evidence of access and substantial similarity are sufficient to create an inference of copying. 2 Nimmer on Copyright, § 139.4. Plaintiff's design was on the market from November, 1971 to August, 1972 when the defendant began making it. It was available to the trade.

█ The question is whether the plaintiff is likely to prevail at trial on the following issues: (1) Did plaintiff obtain a valid copyright? (2) Did the defendant copy the plaintiff's copyrighted design?

██ If the resolution of these issues favors the plaintiff, there is a likelihood of his success upon the trial of the permanent injunction. By express provision of Section 112 of the Copyright Act, a preliminary injunction may issue upon the filing of a complaint to enjoin further violations of copyright. The Court of Appeals has told us that the appropriate test in a copyright infringement case of this sort is whether an average lay observer would find a substantial similarity in the designs, recognizing the copy as an appropriation of the copyrighted work. Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.), 360 F.2d 1021 (2 Cir. 1966). An injunction pending the outcome of trial in such a case should issue if plaintiff can show a reasonable probability of prevailing on the merits. American Visuals Corp. v. Holland, 261 F.2d 652, 654 (2 Cir. 1958); Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., 409 F.2d 1315, 1316–1317 (2 Cir. 1969), rev'g 296 F.Supp. 736 (S.D.N.Y.1969).

I

The defendant contends that the plaintiff's copyright design is a common pattern in the textile trade; that it falls in the category of "patchwork merchandise," and has been in the public domain from time immemorial. There is no doubt that each of the designs in each square is in the public domain or that the colors used are primary or calico colors which never could be appropriated to exclusive use. Yet the arrangement of the known designs in a pleasing pattern with a particular juxtaposition of colors may be deemed "the reproduction[s] of a work of art." Section 5(h) of the Copyright Act, 17 U.S.C. § 5. In Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2 Cir. 1960), the Court of Appeals held that ornamental designs on cloth were the proper subject of copyright under that section. A design printed on dress fabric is also copyrightable as a "print" under Section 5(k). Peter Pan Fabrics, Inc. v. Brenda Fabrics, Inc., 169 F.Supp. 142 (S.D.N.Y.1959). The copyright protects originality rather than novelty or invention. Mazer v. Stein, 347 U.S. 201, 218, 74 S. Ct. 460, 98 L.Ed. 630 (1954). "No large measure of novelty is necessary." Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 102–103 (2 Cir. 1951); Peter Pan Fabrics, Inc. v. Dixon Textile Corporation, 280 F.2d 800, 802 (2 Cir. 1960).[2] I find the creation of the pat-

2. "An orginal combination or arrangement of colors should be regarded as an artistic creation capable of copyright protection." 1 Nimmer on Copyright, § 32.

tern in suit to be sufficiently original to merit copyright either as a reproduction of a work of art or as a print.

■ The defendant contends, however, that even if the plaintiff published first with copyright notice on the selvage, plaintiff's failure to register the copyright until after the defendant began his own publication, is fatal. The contention is without merit. Washingtonian Pub. Co. v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470 (1939).

## II

■ Having found that there was enough originality to make the Romeo pattern the proper subject of copyright, I find that the defendant infringed the copyright. No expert has been tendered to apply the mathematical laws of permutations and combinations, but it is sufficiently evident that the similarity of the colors applied to the respective designs, design for design, is more than likely to be no coincidence. As Professor Nimmer has written, "similarity of color arrangements may create an inference of copying of other protectible subject matter." 1 Nimmer, *supra*, § 32. See also Judge Frankel's statement in Coleur International Ltd. v. Opulent Fabrics Inc., 330 F.Supp. 152, 154 (S.D. N.Y.1971). The almost identic imposition of colors, plus the additional common design, not found on the French fabrics, but only on an unidentified "salesman's necktie" leads to the finding that the copying was of plaintiff's pattern rather than of the French fabrics.

The formulation of Judge Learned Hand, while in a sense a recognition of the *ad hoc* nature of these cases, put the test for infringement in the following terms:

" . . . the ordinary observer, unless he set out to detect the disparities,

would be disposed to overlook them, and regard their aesthetic appeal as the same. That is enough. . . ." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., *supra*, 274 F.2d at 489. The fumbling of counsel and witnesses at the hearing, confusing one pattern with the other, is a kind of demonstrable evidence of the similarity. As a lay observer, my eyes tell me that the patterns and the colors are the same. In Judge Hand's words, "That is enough." For cases close to the point, see Coleur International Ltd., *supra*; Ideal Toy Corp. v. Adanta Novelties Corp., 223 F.Supp. 866 (S.D.N.Y.1963); Fabrex Corp. v. Scarves by Vera, Inc., 129 U.S.P.Q. 392 (S.D.N.Y.1961); Clarion Textile Corp. v. Slifka, 223 F.Supp. 950 (S.D.N.Y. 1961); Peter Pan Fabrics, Inc. v. Brenda Fabrics, Inc., *supra*; Peter Pan Fabrics, Inc. v. Acadia Company, Inc., 173 F.Supp. 292 (S.D.N.Y.1959); Peter Pan Fabrics, Inc. v. Puritan Dress Co., 207 F.Supp. 563 (S.D.N.Y.1962).

The defendant opposed the Court's suggestion that the hearing be consolidated with trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). I did not feel I wanted to press counsel who might conceivably not be fully prepared. I now regret that I did not order the consolidation. I will, however, if the defendant requests it, schedule a trial on the permanent injunction to add to the evidence received which will become "part of the record on the trial." *Id.*

A preliminary injunction will issue. Plaintiff is to submit an appropriate order on notice, pursuant to Rule 65(d). Defendant may submit a cross-order at the return date. Suggestions for appropriate security will also be considered.

The foregoing shall constitute the findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).