**EISEN, DURWOOD & COMPANY, INC. d/b/a Ariel Books, Plaintiff,**

v.

**Christopher R. TOLKIEN, et al., Defendants.**

**No. 86 Civ. 1081 (VLB).**

United States District Court, S.D. New York.

April 6, 1992.

Szold & Brandwen, New York City, for defendants.

Bluestein & Sander, New York City, for Martin J. Bluestein.

Arent, Fox, McGarrahan & Heard, New York City, for plaintiff.

Deutsch, Klagsburn & Blasband, New York City, for Houghton Mifflin Company.

Morvillo, Abramowitz & Grand, New York City, for George Allen & Unwin, Ltd.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

This case involves the validity of the copyright on J.R.R. Tolkien's three-part novel *The Lord of the Rings* ("the work").[1] The operative facts are undisputed.

Plaintiff, a book packaging firm specializing in arranging for new editions of previously published material, seeks declarations that any U.S. copyright on the work is invalid, that its original edition is in the public domain and that plaintiff will not infringe any U.S. copyrights by publishing it and taking related steps.

Defendants, the author's executors, heirs, publishers and others with an inter-

---

**1.** The controversy has been narrowed to *Fellowship of the Ring* and *The Two Towers;* it has been agreed that *The Return of the King* need not be separately considered by the court, and the facts of the case are described without any reference to differing circumstances sometimes applicable to *The Return of the King.*

est in the copyright, seek a declaration that U.S. copyrights on the work are valid. Both plaintiff and defendants have moved for summary judgment.

I find the Tolkien copyright valid, grant defendants' motion and deny that of plaintiff.

The work was originally published in 1952 in Britain by George Allen & Unwin, which in 1954 granted Houghton Mifflin ("Houghton") a license to publish the work in the United States. In 1954 Houghton received temporary five-year U.S. copyright protection, referred to as *ad interim* copyright, based upon prior British publication as authorized by section 22 of the Copyright Act of 1909,[2] now superseded by the current Title 17, United States Code as enacted in 1976. Section 22 of the 1909 Act made no reference to any requirement of inclusion of a copyright notice on the works involved.

Great Britain had already adhered to the Universal Copyright Convention which came into force for the United States in 1955. Under section 9 of the Copyright Act of 1909 as of that time, this entitled the work, which had a subsisting *ad interim* copyright, to copyright protection in the United States without complying with various formalities including that of printing a copyright notice:

"Upon the coming into force of the Universal Copyright Convention in a foreign state or nation ... every book ... of a citizen or subject thereof in which ad interim copyright was subsisting on the effective date of said coming into force shall have copyright for twenty-eight years from the date of first publication abroad without the necessity of complying with the further formalities specified in section 23 of this title."

Among the formalities specified under section 23 of the Copyright Act of 1909 was "printing of the copyright notice."

Plaintiff does not challenge the sufficiency of various steps needed to renew the copyright, and has abandoned any claim that importation of copies printed abroad in disregard of the now-lapsed Manufacturing Clause (section 16 of the 1909 Act as amended) resulted in loss of copyright.[3] In any event, section 16 of the 1909 Act nowhere states that forfeiture of copyright would result from its violation.[4]

In 1983, copyrights on the work were issued under the 1976 statute.

The dispute between the parties focuses on the effect of the undisputed fact that for a number of years, during which the extension of the *ad interim* copyright under section 9 of the 1909 Act constituted the sole U.S. protection of the work, large numbers of British-published copies of the work were distributed without a copyright notice in the United States. Plaintiffs urge that this worked a forfeiture of copyright protection. I disagree.

In approaching issues of this kind, courts examine the governing language, the conduct involved and also the consequences of varying interpretations. While "forfeitures are never to be inferred from doubtful language." *Washingtonian Publishing Co. v. Pearson*, 306 U.S. 30, 42, 59 S.Ct. 397, 403, 83 L.Ed. 470 (1938), this rule need not be relied upon: the 1909 Copyright Act makes no provision anywhere for forfeiture of copyrights of aliens because of distribution of their works without a copyright notice.

The conclusion flowing from absence of any such forfeiture language, and from the affirmative language taken from section 9

---

**2.** All references to the Copyright Act of 1909 refer to the sections of the Act as in effect at the time of the events in question.

**3.** Plaintiff's counsel stated in a letter to the court of July 11, 1990: "Plaintiff Does Not Contend That Violation of the Manufacturing Clause Forfeits Ad Interim Copyright." Instead, plaintiffs rely on absence of copyright notice on numerous copies of the work.

**4.** See *Meccano, Ltd. v. Wagner*, 234 Fed. 912 (D.Ohio 1916). The Manufacturing Clause initially survived the 1976 revision, 90 Stat. 2588, as section 601 of that statute, 17 U.S.C. § 601(b)(1), limited, however, to works of U.S. authors and thus inapplicable to the work in question here. The Clause was upheld against constitutional attack in *Authors League of America v. Oman*, 790 F.2d 220 (2d Cir.1986), but automatically expired on July 1, 1982.

of the 1909 Act and quoted above, is further confirmed by other provisions of section 9 of that Act, which make it clear that a copyright could be extended to a foreign work with or without copyright notice, and that the effect of the copyright notice was to exempt the copyrighted work from various provisions of the copyright law:

"... the copyright secured by this title shall extend to the work of an author or proprietor who is a citizen or subject of a foreign state or nation only under the conditions described in subsections ... (c) below:

\* \* \* \* \* \*

"(c) When the Universal Copyright Convention, signed at Geneva on September 6, 1952 [footnote omitted] shall be in force between the United States of America and the foreign state or nation of which such author is a citizen or subject, or in which the work was first published, any work to which copyright is extended pursuant to this subsection shall be exempt from [listed] provisions of this title: *Provided, however,* That such exceptions shall apply only if from the time of first publication all the copies of the work published with the authority of the author or other copyright proprietor shall [bear a copyright notice]."

This provision pointedly fails to invalidate copyrights where the notice is omitted, and merely grants the incentive of waiving other provisions of the 1909 Act which are not material here. This portion of section 9 complements the earlier quoted portion of the same section, which appears as a separate paragraph of subsection (c). Both provisions indicate that a foreign author may have copyright without inclusion of copyright notice on the work, but gains a benefit from including the notice because this permits waiver of various other requirements.

This statutory structure created by the 1909 Act is quite logical, given the problems of accommodating foreign copyright and publication practices with those of the United States—an accommodation which is presumably necessary in order to gain the reciprocal benefit of foreign recognition of U.S. copyrights. Where foreign publications are imported up to limits permitted by the Manufacturing Clause or in excess of those limits (an activity which as noted does not invalidate the copyright but merely triggers other potential sanctions), the foreign publisher might well be unaware of U.S. copyright notice practice. Imposing the draconian sanction of forfeiture of the copyright for the often unintentional infraction would be certain to cause resentment abroad with adverse effects on implementation of U.S. intellectual property rights in other countries.

Similar problems arose when the Berne Copyright Convention was more recently adopted by the United States, necessitating enactment of the Berne Convention Implementation Act, Pub Law 100–568, 102 Stat. 2883 (1988), permitting foreign authors to obtain copyright in the United States without registration. See generally Nimmer, "The Implications of Berne on U.S. Copyright Law," 8 Cardozo Arts & Entertainment L.J. No. 1 at 27 (1989).

Public Law 100–568 even eliminated the requirement that domestic authors display a copyright notice, substituting the word "may" for "shall" in 17 U.S.C. § 401(a).

Current copyright law cannot, of course, be utilized to alter retroactively any provision of the 1909 Act. But it is relevant to show absence of any need to strain the text of the 1909 statute or to depart from its plain meaning in order to reach a desired result, when the result flowing from the plain meaning (absence of forfeiture for omission of copyright notice) has been adopted in a much broader way in the current statute. Subsequent statutory enactments, although obviously not independently persuasive with respect to the meaning of prior provisions, are relevant to show the reasonableness of a literal interpretation of the plain language of a prior enactment.

In *Zendman v. Harry Winston, Inc.,* 305 N.Y. 180, 189 n. 3, 111 N.E.2d 871, 876 (1953), Judge Fuld writing for the New York Court of Appeals referred to a future enactment not, indeed, as yet adopted, in support of an otherwise independently

proper interpretation of existing law as follows:

"We note that the Official Draft of the Proposed Uniform Commercial Code, representing the judgment of leading experts in the field of sales law, goes far beyond the case under consideration."

Here, the current 17 U.S.C. § 401 goes far beyond the case under consideration in exempting not merely foreign publications, but all copyrighted works, from the necessity of providing a copyright notice. Instead of being a requirement, the notice is now treated as relevant to remedies for all rather than merely foreign publications:

"(d) *Evidentiary Weight of Notice.* If notice of copyright ... appears on the published ... copies to which a defendant ... has access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement." Pub Law 100–568, 102 Stat. 2857 (1988).

The right to retain copyright without forfeiture due to omission of a copyright notice is also consistent with intellectual property law in general. Under the Patent Code (35 U.S.C. § 287), a patent notice is necessary to obtain damages for pre-suit infringement, but not for retention of residual patent rights.

Similarly, under the Lanham Trade-Mark Act (15 U.S.C. § 1111), a trademark holder may display a circled R or similar notice and where this is not done, "no profits and no damages shall be recoverable ... unless the defendant had actual notice of the registration." But as in the case of patents, there is no irrevocable forfeiture of the trademark or its registration because of failure to display the notice.

The 1909 Copyright Act, perhaps wisely in view of problems of international coordination of copyrights, anticipated subsequent broader developments in copyright law by avoiding forfeiture for absence of a copyright notice initially in the limited area of protection of foreign authors. This may have been prudent where many such authors might not know of all otherwise applicable United States requirements.

The 1909 Act in this respect also aligned itself with other intellectual property notice provisions which affect ability to obtain damages but do not authorize forfeitures.

The reasons for defendants' failure to affix the desirable but under the 1909 Act—as under current broader law—nonmandatory copyright notice are both speculative and irrelevant.[5]

Settle judgment on notice.

SO ORDERED.

---

**5.** Evidence suggests that omission of the copyright notice may have resulted from a misinterpretation of the Manufacturing Clause by agents for the author or copyright holder and might, indeed, have been unauthorized by them. If the omission had been inadvertent or unauthorized by the author or copyright holder, it has been argued that this might avoid forfeiture even had such a result not also been avoided by the foreign copyright provisions of the 1909 Act. Whether the facts would support summary judgment for defendants on this point need not be determined in light of the plain meaning of the Act, which in any event does not provide for forfeiture under the circumstances involved here.