## AUTOGRAPHIC REGISTER CO. v. DIESBACH et al.

(Circuit Court of Appeals, Third Circuit. December 28, 1922. Rehearing Denied February 19, 1923.)

### No. 2797.

1. **Patents ⊜328—Reissue 14,189, claims 6, 11–15, for autographic register, held not infringed.**

The Krauth reissue patent, No. 14,189, claims 6, 11–15, for autographic registers, the novel element of which was two protruding pins which entered into apertures in the web and stopped its forward movement, *held* not infringed by defendant's device, in which the forward movement was stopped by release of contact between the rolls, and the pins thereafter entered the apertures only to bring the webs into lateral alignment.

On Petition for Rehearing.

2. **Patents ⊜324(5)—Validity and infringement of patent are not questions of fact on which trial judge's findings are conclusive.**

The questions of the validity and infringement of a patent, which are to be decided both in the trial court and on appeal according as the respective courts were impressed by the testimony and were influenced by the quality of the alleged invention and the character of the alleged infringement, are not pure questions of fact as to which the findings of the trial judge based upon conflicting evidence are conclusive.

Appeal from the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

Suit in equity by Eleonore Diesbach and another against the Autographic Register Company for infringement of a patent. Decree for complainants (285 Fed. 199), and defendant appeals. Reversed, with instructions to dismiss the bill.

Justus Sheffield, of New York City, for appellant.
William R. Wood, of Cincinnati, Ohio, for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. This case concerns autographic machines for feeding, registering, and manifolding sales slips and the like. The descriptions of such machines generally, of the particular type devised by Krauth, whose patent is sued on, and also of the type used by the alleged infringing defendant, are fully set forth in the comprehensive opinion of the court below, which is reported at 285 Fed. 199. In view of such precedent, complete statement and by reference thereto, we save needless present repetition. Without entering

into detail, it suffices to say the fighting crux of the case centered on the two pins common to both structures, and which were adapted to rise upward and protrude through a prearranged aperture as the sheets of paper were passed forward.

[1] The machine disclosed by the reissue patent in suit No. 14,189, granted August 29, 1916, to Albert Krauth, consisted of a bed plate over which superimposed manifolding sheets of paper, with duly spaced circular regulating apertures, were drawn forward manually. Pressing against the under side of the lower sheet were two yielding pins, which, as the specification says, "automatically enter the next succeeding pair of web apertures brought into registry with the pins. These pins thus function with reference to the length of the strip to be severed, and also in relation to the web position and registry on the writing table, so that more perfect manifolding work is performed as well as the insurance of uniform length strips."

The advance of the sheets being stopped by these pins abutting against the end walls of the apertures, the superimposed sheets which have passed forward may be torn off. It will thus be seen that not alone the protruding of pins into the approaching web aperture, but the conjoint functioning of the protruding pin after it has entered the aperture with the synchronously approaching end wall of such apertures, is necessary in order to thereby stop the advancing webs. The web-advancing elements of the machine do not stop functioning, but the preponderating stop power of the pin dominates, and the pin by engaging the end wall of the web aperture blocks web advance.

Moreover, not a mere protruding pin but a protruding, web-stopping pin is written into the claims, and when the web-stoppage function was written into the protruding pin, it follows that every protruding pin which did not have this web-stoppage function was written out of the claim and therefore made free for use by the public or any subsequent patentee. Take, for example, in claim 6, here in controversy,[1] we find the pin function has descriptive words "intercept," "arrest," and the web function descriptive word "longitudinal movement." We have here a pin stoppage of the longitudinal movement of the paper. Such being the disclosure of the patentee and the measure of his claim, we see the test of infringement is not pin protruberance, but pin stoppage of longitudinal web movement. The question is, not what other functions the defendant's protruding pins may have, but whether they function to block web longitudinal advance.

And herein we find the defendant's machine does not use its protruding pins to block longitudinal web advance. The plaintiff stops

[1] "In an autographic register, a pair of side frames for supporting therebetween webs of paper, a writing table connecting said frames, over which the paper from the webs is drawn, a plate connected to said side frame at an elevation above said table and at one end thereof, forming an intermediate passage for the paper, a series of yielding members each having a protruberance projected therefrom normally transverse across said way to intercept the paper through registering apertures formed therein at definitely spaced intervals to arrest the longitudinal movement of the paper, a manually operated rocker member, accessible from the exterior of register, engaged with said yielding member for passage clearance and release of the paper."

longitudinal web advance by the positive and prohibitive engagement of the stop-pin protruberance, and the end wall of the pin-stopped web; for engagement of pin and aperture end wall not only stop web movement, but without such engagement the web would not be stopped. If the web aperture were longer, if it extended beyond where stoppage was desired, there would be no web stoppage until the web had advanced to a point where pin and end wall met.

But while the defendant has the element of protruding pins and web aperture, its pins are not stop pins, nor does the end wall or indeed any part of its wall aperture function as a stoppage agency. In its device the web-moving element is also its web-stop movement. This dual function, web movement and web stoppage, is exerted by two rollers, one above and one below the sheets which engage the web and co-operate to move it forward and between them until they reach a web aperture where their mechanism and construction are such that they simply stop engaging the web and the web automatically stops itself. It will thus be seen the plaintiff stops longitudinal web movement by the positive engagement of the stop pin with the end wall of the aperture. The defendant stops longitudinal web movement by the negative nonengagement, or disengagement, of its rolls with the web. In the defendant's device the aperture, by its own vacuity, so to speak, effects web stoppage. In other words, when the defendant's rolls reach the aperture, they, so to speak, dive into it, and such aperture immersion makes them functionless to affect web advance and the nonroll engaged sheets become stationary. On the other hand, when the plaintiff's pins reach the aperture, they engage the approaching end wall of the aperture to stop web movement. The defendant's stoppage is negative in action by roll nonengagement; the plaintiff's positive in action by pin-end wall engagement. This, as it seems to us, is where the question of infringement centers. Both devices effect stoppage, but in different ways, by different agencies, by the use of different functions. The plaintiff's web stops by pin and aperture end-wall engagement; the defendant's web stops by web nonroll engagement. The defendant's stoppage is caused by the absence of a web in the body of the aperture; the plaintiff's, by the presence of the web in the end wall of the aperture.

The defendant having thus stopped web movement as soon as his rolls crossed the forward end of the aperture, and having neither approach nor power to approach the end wall of the aperture, it will be seen that an open space was left in the aperture between the rolls and the end wall into which pins or protruberances could enter. But these pins being projected into the aperture of a web at rest because the rolls had ceased to engage it, in no way affected web stoppage, and therefore were functionally not the protruding pins of either the disclosure or the claims of the patent in suit. The mere fact the pins protrude does not make them infringe; but the fact they do not web-stop makes them noninfringers and leaves them free to be used for any other purpose. Such other purpose—one that shows they are useful for another and permissible function—is the mechanical fact that they are made to vibrate laterally and after the web has stopped and by its aperture the rolls have ceased to move it, these laterally vibrating protruding pins

engage the aperture side wall of the stopped superimposed webs and shift them into lateral alignment. Such being the pertinent several and differing operative characteristics of the plaintiff's and defendant's devices, we hold infringement does not exist, and, this question being decisive, it is not necessary to enter upon the question of the effect of the reissue and other features of the case.

The record will be remitted, with instructions to dismiss the bill on the ground of noninfringement.

### Petition for Rehearing.

PER CURIAM. We write this memorandum, not to vindicate our opinion, but merely to quiet the concern of counsel for the appellees who feel aggrieved that the court, as constituted, should have decided this case. When this case came on for hearing, it happened that but two judges were present. Counsel were given the option of postponing the hearing until a full bench could be had or of going on with the hearing before the two judges, with an announcement from the bench that, if the two judges should hear the case and should not agree in their judgment, no decision would be rendered, but the case would be set down for hearing in the future before a full bench. Counsel for both parties agreed to proceed, and the case was argued. After the period at which the case was heard, the judges, pursuant to a practice followed in this circuit, separated without discussing the case and returned to their homes. On reconvening two weeks later, they met in conference, each with his judgment independently arrived at, and for the first time exchanged views and conclusions. It so happened that they were identical. Thus any question of prejudice or disadvantage arising out of a two-judge court disappeared, and, accordingly, the decree was entered.

[2] The decree, however, was one of reversal. Its effect was to overturn the decree below holding the patent valid and infringed in a case where the main issues were validity and infringement. The appellee now complains that the decree of this court was based on a finding of fact by two appellate judges in opposition to a finding of fact by the trial judge and, accordingly, was in violation of the rule laid down by the Supreme Court of the United States in Adamson v. Gilliland, 242 U. S. 350, 37 Sup. Ct. 169, 61 L. Ed. 356. In that case the question of fact was which of the makers of contesting devices was first to make and market his device. Such being the issue, the Supreme Court quite pertinently said:

"Condsidering that a patent has been granted to the plaintiff the case is preeminently one for the application of the practical rule that so far as the finding of the master or judge who saw the witness 'depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable.'" Davis v. Schwartz, 155 U. S. 631, 636, 15 Sup. Ct. 237, 39 L. Ed. 289.

The court also applied the rule requiring one opposing a patent to prove prior invention beyond a reasonable doubt, as stated in the case of The Barbed Wire Patent, 143 U. S. 275, 284, 12 Sup. Ct. 450, 36 L. Ed. 161. But there is no such question of fact involved in the present case. The only questions, both below and on appeal, were questions

of validity and infringement, to be decided both below and above according as the respective courts were impressed by the testimony and were influenced by the quality of the alleged invention and the character of the alleged infringement. If these are pure questions of fact, which when found and determined by the trial court must be treated as unassailable, then a decree of the trial court holding validity and infringement is in effect final and is not open to review and reversal on appeal. Of course, this cannot be so.

As the petition for rehearing presents nothing with which we are not familiar, it is denied.