**PEARSON et al. v. WASHINGTONIAN PUB. CO., Inc. ***

No. 6921.

United States Court of Appeals for the District of Columbia.

Decided April 25, 1938.

Elisha Hanson and Eliot C. Lovett, both of Washington, D. C., for appellants.

Gibbs L. Baker and Horace S. Whitman, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

MILLER, Associate Justice.

This is an appeal from a decree of the District Court of the United States for the

*Writ of certiorari granted 59 S.Ct. 85, 83 L.Ed. —.

District of Columbia holding that a copyright owned by appellee was wrongfully infringed by appellants and that appellee is entitled to damages for such infringement.

The Washingtonian Publishing Co., Inc., appellee, in December, 1931, published an issue of a monthly magazine of general circulation, called The Washingtonian, claiming copyright thereof by means of the usual notice printed therein as required by the Copyright Act of the United States then in force.[1] However, copies of that issue of the magazine were not deposited in the Copyright Office until February 21, 1933—at which time two copies were deposited and a certificate of registration was obtained. Publication of the magazine The Washingtonian was discontinued after the December 1931 issue.

In August, 1932, appellant Liveright, Inc. published and offered for general sale a book entitled "More Merry-Go-Round" written by appellants Pearson and Allen and printed by appellant Van Rees Press, Inc., one chapter of which included material which is conceded to be practically identical with an article which was included in the December 1931 issue of The Washingtonian. Copyright of the book "More Merry-Go-Round" was claimed by the usual printed notice therein, and on August 26, 1932, copies thereof were deposited in the Copyright Office and a certificate of registration secured. In June, 1933, Liveright, Inc. was adjudged a bankrupt and is not concerned in this appeal.

Chronologically summarized, this means that appellee published and claimed a copyright in December, 1931; appellants published, deposited copies and claimed copyright on the same material eight months later, in August, 1932; appellee deposited copies in February, 1933, fourteen months after its own publication and six months after appellants' publication.

Appellee regards appellants' publication as an infringement. Appellants concede that appellee obtained a copyright,[2] but insist that its right to recover in the present case is barred because it failed, *promptly,* to deposit copies of its magazine as required by Section 12 of the Copyright Act, 35 Stat. 1078, as amended (17 U.S.C.A. § 12);[3] and because in the meantime appellants had acquired superior intervening rights in the literary matter in dispute.

Appellee, in its brief, says:

"The charge here is that the appellants pirated, plagiarized, and stole the property of the appellee and the claim of intervening rights is equivalent to a confessed thief seeking to establish a right of property in the stolen goods."

On the other hand, appellants say in their brief:

"Under such a construction a publisher of a daily newspaper could include a copyright notice in each issue of his paper but decide that, instead of depositing copies and paying the two-dollar registration fee, all of which would exceed $700 per year, he would merely wait and see if any financially responsible party pirated [sic] material contained in any one of the issues and, if so, he would proceed to deposit copies of the issue in question, register his claim, and then institute proceedings, . . Surely, no court would countenance a proceeding under such circumstances . . . ."

And appellee concedes in its brief that no effort was made to deposit copies, as requir-

---

[1] Section 9, Copyright Act of 1909, 35 Stat. 1077, 17 U.S.C.A. § 9. "Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 21 of this title."

[2] See National Cloak & Suit Co. v. Kaufman, C.C.M.D.Pa., 189 F. 215; New York Times Co. v. Star Co., C.C.S.D.N.Y., 195 F. 110; Davenport Quigley Expedition v. Century Productions, D.C., S.D.N.Y., 18 F.Supp. 974; Lumiere v. Pathé Exchange, 2 Cir., 275 F. 428.

[3] Section 12, so far as material, reads as follows: "After copyright has been secured by publication of the work with the notice of copyright as provided in section 9 of this title, there shall be *promptly deposited* in the copyright office or in the mail addressed to the register of copyrights, Washington, District of Columbia, two complete copies of the best edition thereof then published, . . to be accompanied in each case by a claim of copyright. *No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with.*" (Italics supplied.)

ed by the Act, until after counsel were employed to bring suit, thus giving color at least to appellants' innuendo that appellee deliberately waited to see if a financially responsible party would fall into the trap.

We do not wish to be understood, from anything we may say herein, as approving or condoning such practices. Whatever the ethics of the situation may be, and in spite of considerations which may call for professional and public condemnation, the questions which have been presented for our determination in the present case are solely ones of law.

▮ Copyright property under the Federal law is wholly statutory. Bobbs-Merrill Co. v. Straus, 210 U.S. 339, 346, 28 S.Ct. 722, 52 L.Ed. 1086. It is not unusual for statutes to require strict compliance with designated provisions as conditions precedent to the bringing of actions for the enforcement of rights.[4] In this case the Statute provides

(Section 12) that no action shall be maintained for infringement until the provisions of this title with respect to the deposit of copies shall have been complied with. It is argued that this merely postpones "the enforcement of the remedy" and that no matter how long may be the delay in compliance, so soon as compliance takes place the remedy becomes available. The penalty prescribed by Section 13 of the Act, 35 Stat. 1078 (17 U.S.C.A. § 13)[5] is referred to by appellee as indicating the only purpose of the requirement for prompt deposit of copies. Some support for this argument can be found by giving to .the word *until*[6] one of its common meanings; by reading it without careful consideration of the rest of the language of Section 12; and by disregarding the major purposes of the Act. But when the word until is considered in its context, not only in the section but in the light of the whole Act, 17 U.S.C.A. § 1 et seq., as it should be, an entirely different

---

[4] Thus, it has been held that: No action may be maintained under the Workmen's Compensation statutes unless a claim has been timely filed. Rogulj v. Alaska Gastineau Mining Co., 9 Cir., 288 F. 549; Bussey v. Bishop, 169 Ga. 251, 150 S.E. 78, 67 A.L.R. 287. See Fulton v. Hoage, 64 App.D.C. 232, 77 F.2d 110.

A holder of a note may not seek recovery from an indorser without first making a timely presentment and notification of dishonor. Roberts v. International Bank, 58 App.D.C. 87, 25 F.2d 214. See Magruder v. Union Bank of Georgetown, 3 Pet. 87, 7 L.Ed. 612.

Residence for the statutory period is a prerequisite to an action for divorce. Winston v. Winston, 50 App.D.C. 321, 271 F. 551; Rollings v. Rollings, 60 App. D.C. 305, 53 F.2d 917.

A condition precedent to a shareholder's representative suit under Federal Equity Rule 27, 28 U.S.C.A. following section 723, is appeal to the officers of the corporation or its stockholders. Watts v. Vanderbilt, 2 Cir., 45 F.2d 968.

One of the essentials of the cause of action on an insurance policy is the filing with the insurer of proofs of loss. Harris v. North British & Mercantile Ins. Co., 5 Cir., 30 F.2d 94, certiorari denied, 279 U.S. 852, 49 S.Ct. 348, 73 L.Ed. 995; Hatch v. United States Casualty Co., 197 Mass. 101, 83 N.E. 398, 14 L.R.A.,N.S., 503, 125 Am.St.Rep. 332, 14 Ann.Cas. 290.

The acquisition of title by adverse user is an example of intervening rights and dispossession of an owner whose only fault is his failure timely to assert his rights. 2 Tiffany, Real Property, 2d Ed. 1920, 1920.

[5] "Should the copies called for by section 12 of this title not be promptly deposited as provided in this title, the register of copyrights may at any time after the publication of the work, upon actual notice, require the proprietor of the copyright to deposit them, and after the said demand shall have been made, in default of the deposit of copies of the work within three months from any part of the United States, except an outlying territorial possession of the United States, or within six months from any outlying territorial possession of the United States, or from any foreign country, the proprietor of the copyright shall be liable to a fine of $100 and to pay to the Library of Congress twice the amount of the retail price of the best edition of the work, and the copyright shall become void."

[6] ". . . . up to the time of, implying cessation or reversal at that time; . . . " Webster. "The word 'until' is a word of limitation, and presupposes that, when the condition following such word shall become operative, the precedent condition or status shall fall." Bud Hoard Co. v. F. Berg & Co., 137 Okl. 16, 17, 278 P. 273, 274. "Its office is to point out some point of time or the happening of some event when what precedes it shall cease to exist or have any further force or effect." Maginn v. Lancaster, 100 Mo.App. 116, 130, 73 S.W. 368, 372.

result is reached, and a different meaning is properly ascribed to it.[7]

It must be conceded that appellee could not maintain an action for infringement at the time of publication of "More Merry-Go-Round" or for six months thereafter. Fourteen months having elapsed since publication and claim of copyright, and six months having elapsed since the alleged infringement, appellee undertakes to comply with the Statute and thus to remove the restriction which impedes action. What must it do? Section 12 provides that it must *promptly deposit* two copies. It does not say merely to deposit, but that the deposit must be promptly made; and promptness must be measured from the date of publication. Unless it can be said, therefore, that a delay of fourteen months is promptness, appellee has failed to comply with the act.

It is not contended that the deposit was made promptly in the present case; and there is no basis upon which such a contention could be made. Synonyms for the word prompt, as commonly used, are punctual, ready, expeditious and quick. Its antonyms are dilatory, procrastinating, slow and sluggish. To ascribe to the word a meaning which would describe appellee's action as prompt would be to give it a meaning exactly its opposite.[8]

The copyright laws must be given a reasonable construction and the various sections thereof must be read together with a view to effecting the purposes intended by Congress. Bobbs-Merrill Co. v. Straus, supra; Metro-Goldwyn-Mayer Distributing Corp. v. Bijou Theatre Co., 1 Cir., 59 F.2d 70, 76. The two major purposes of the Act are (1) to secure to the author, or his successors in interest, a monopoly,[9] more or less in the nature of a reward for his genius and industry (Harris v. Coca-Cola Co., 5 Cir., 73 F.2d 370, certiorari denied, 294 U.S. 709, 55 S.Ct. 406, 79 L.Ed. 1243), as well as for the encouragement of others, similarly as in the case of patents;[10] (2) to give notice to the public that the author or other owner has not abandoned the child of his intellect, or dedicated it to public use.[11] We said in Koppel v. Downing, 11 App.D.C. 93, 104:

"The law of copyright, while securing a long continued monopoly, contemplates, and the policy of it requires that the public should have notice, by a true and correct official registry, as to the real author or

---

[7] It has been held that where an insurance policy failed to provide a definite time within which to file a proof of loss, such proof must be filed within a reasonable time in order to come within the provision that no action could be maintained *until* all conditions had been performed. Southern Fire Ins. Co. v. Knight, 111 Ga. 622, 36 S.E. 821, 822, 52 L.R.A. 70, 78 Am.St.Rep. 216. Cf. Barbour v. St. Paul Fire & Marine Ins. Co., 101 Wash. 46, 171 P. 1030.

In Chelmsford Co. v. Demarest, 7 Gray, Mass., 1, a case involving an action on a suretyship bond of a public official, which bond was for a term "until the appointment and qualification of his successor," it was held that the surety was not bound for an indefinite period after the incumbent's term expired, but only for a reasonable time. See, also, Camden v. Greenwald, 65 N.J.L. 458, 47 A. 458, and American Surety Co. v. Independent School Dist. No. 18, 8 Cir., 53 F.2d 178, 81 A.L.R. 1, certiorari denied, 284 U.S. 683, 52 S.Ct. 200, 76 L.Ed. 577.

[8] See Bacigalupi v. Phœnix Bldg. & Const. Co., 14 Cal.App. 632, 641, 112 P. 892, 895, reasonable time; Houston & T. C. Ry. v. Foster, Tex.Civ.App., 86 S.W. 44, ordinary diligence; Burlingame v. Adams Express Co., C.C.R.I., 171 F.

902, 904, without unreasonable delay; Western Union Tel. Co. v. Barbour, 206 Ala. 129, 89 So. 299, 17 A.L.R. 103, as quickly as practicable under the circumstances. See, also, Weil, American Copyright Law (1917) 313.

[9] Globe Newspaper Co. v. Walker, 210 U.S. 356, 367, 28 S.Ct. 726, 52 L.Ed. 1096; Stern v. Rosey, 17 App.D.C. 562, 564.

[10] Bauer & Cie v. O'Donnell, 229 U.S. 1, 10, 33 S.Ct. 616, 57 L.Ed. 1041, 50 L.R.A.,N.S., 1185, Ann.Cas.1915A, 150; Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 511, 37 S. Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959; H. R. Rep. No. 2222, 60th Cong., 2d Sess. (1909) 7: "Not primarily for the benefit of the author, but primarily for the benefit of the public, such rights are given. Not that any particular class of citizens, however worthy, may benefit, but because the policy is believed to be for the benefit of the great body of people, in that it will stimulate writing and invention, to give some bonus to authors and inventors."

[11] Caliga v. Inter Ocean Newspaper Co., 215 U.S. 182, 188 et seq., 30 S.Ct. 38, 54 L.Ed. 150; Wheaton v. Peters, 8 Pet. 591, 661, 8 L.Ed. 1055.

proprietor entitled to the enjoyment of such monopoly as against the public."

Prompt deposit and registration aid in achieving both purposes. The reason therefor is well stated in Weil, American Copyright. Law (1917) 310, as follows:

"The object sought by compelling registration is that third persons, by inquiry, may ascertain whether, or, not, any proposed acts or works would violate any existing statutory copyright. The primary object of requiring the deposit of copies is that the subject matter of works in which copyright is claimed, may be made public and available, for purposes both of information and of avoiding infringement. The purely secondary object is the enrichment of the Library of Congress. The primary purpose would be entirely defeated unless the deposit were made 'promptly.' If the only necessary effect of failure to make the deposit, 'promptly,' were to prevent the institution of suit, until the deposit was made, the statute would become, as the former English one was justly called, a mere snare for the unwary, who were foolish enough to rely upon absence of registration as showing absence of copyright." [And see succeeding pages]

An examination of the history of the copyright law brings us to the same conclusion. In its earlier forms the law required deposits to be made within definite periods of time—(1) deposit of title of the copyrighted material before publication and of a copy of the material itself within six months after publication (Act of 1790, 1 Stat. 125); (2) deposit of title before publication and of a copy within three months after publication (Act of 1831, 4 Stat. 437; and Act of 1846, 9 Stat. 106); (3) deposit of a printed copy within one month after publication (Act of 1865, 13 Stat. 540); (4) deposit of title before publication, and of copies within ten days after publication (Act of 1870, 16 Stat. 213); and (5) deposit of title "on or before the day of publication" and deposit of copies "not later than the day of the publication . . . ." Act of 1891, 26 Stat. 1107. The Act of 1909, § 9, 35 Stat. 1077 (17 U.S.C.A. § 9) substituted the requirement of prompt deposit for a specific time limit. It gave a copyright to anyone who published with claim of copyright; but it split up the congeries of rights, powers, privileges and immunities which constituted the original concept of copyright and gave to the word a new meaning, limited at least to the extent that no action for its protection could be maintained until after compliance with the requirement of prompt deposit.

The reasons for promptness of deposit are present today in even greater measure than in earlier years. The liberalizing of the requirement should not be so construed as to defeat its purpose. Appellee's failure to comply with the Act in the present case, coupled with discontinuance of publication of its magazine and apparent abandonment of its copyright, produced just such a result as Section 12 was designed to prevent.[12]

We are led to the same conclusion, also, by the time limits fixed by Section 13 of the Act, relating to forfeiture of copyrights, and by the language of the House Committee Report on the bill which became the Act of 1909.[13] Section 13 provides for forfeiture —as contrasted with mere loss of right to maintain action—in case of failure to deposit within three months after notice from the Register of Copyrights, or within six months in the case of a copyright proprietor in an outlying territorial possession of the United States.

Lumiere v. Pathé Exchange, 2 Cir., 275 F. 428, relied on by appellee, did not decide the question of the present case. The court in that case (page 430) expressly avoided consideration of "Other important and difficult questions depending upon the construction of the Copyright Act * * *." And in his concurring opinion, Hough, J., said:

"I agree with the foregoing opinion *as far as it goes.* There are, however, two points for which this decision will by inference be thought authority and as to which I do not wish to be concluded. They are: (1) * * * and (2) whether in any form of action plaintiff can recover damages for infringements committed *before he* not only registered his claim of copyright, but *deposited the requisite number of copies.*" [Italics supplied]

Judge Hough's second reserved point is the one with which we are concerned.

In our opinion the purpose of the law was clearly not to give retroactive effect to a grossly tardy compliance and thus to establish *ab initio* appellee's right to maintain

---

[12] See Weil, American Copyright Law (1917) 313.

[13] H.R.Rep.No.2222, supra note 10, and language there quoted. See, also, p. 11 of the Report.

250

an action against one who in the interim had acted adversely to its interest.[14] Cf. Wheaton v. Peters, 8 Pet. 591, 664, 8 L.Ed. 1055; Ebeling & Reuss v. Raff, E.D.Pa., 28 U.S.P.Q. 366. See, also, Sutherland, Statutory Construction, 2d Ed. 1904, § 632. It is not necessary for us to decide what the rights may be, of one who makes such a tardy compliance, as against another who pirates the copyrighted material *after* the deposit of copies.

Reversed.

STEPHENS, Associate Justice, concurs in the result.

[14] The situation in the instant case is somewhat similar to that of a reissue of a patent. R.S. 4916 (35 U.S.C.A. § 64) provides that whenever a patent is wholly or partially inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his invention more than he had a right to claim as new, if the error arose by inadvertence, accident, or mistake, and without fraudulent intent, the issued patent may be surrendered and a new patent for the same invention, in correct form, be reissued to the patentee. Under such circumstances, the courts have held that a person who, between the date of the original issue and the date of an application for a reissue, makes or sells an article or uses a process which is broader than the original grant but is included in the application for reissue, acquires an intervening right as against the patentee. Ashland Fire Brick Co. v. General Refractories Co., 6 Cir., 27 F.2d 744, 746, cert. dismissed, 278 U.S. 662, 49 S.Ct. 7, 73 L.Ed. 569; Krauth v. Autographic Register Co., D.C.N.J., 285 F. 199, reversed on other grounds, 3 Cir., 286 F. 470; Supreme Mfg. Corp. v. Security Mfg. Co., 9 Cir., 299 F. 65, certiorari denied, 266 U.S. 614, 45 S.Ct. 96, 69 L. Ed. 469.