## KNICKERBOCKER PLASTIC CO., Inc. v. ALLIED MOLDING CORP.

## KNICKERBOCKER PLASTIC CO., Inc. v. B. SHACKMAN & CO., Inc.

### Nos. 19, 20, Docket 21672, 21673.

United States Court of Appeals Second Circuit.

Argued Oct. 5, 1950.

Decided Oct. 26, 1950.

Charles Sonnenreich, of New York City (Arthur N. Seiff, of New York City, on the brief), for defendants-appellants.

Max Shlivek, of New York City (Shlivek & Brin and Saul S. Brin, all of New York City, on the brief), for plaintiff-appellee.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

On July 30, 1946, Design Letters Patent No. 145,344 were issued on a toy duck design to Constance Ray White, wife of the president of plaintiff-appellee Knickerbocker Plastic Co., Inc. Now the assignee of the patent, Knickerbocker thereunder manufactures in plastic large quantities of these ducks as children's playthings. Defendant Allied Molding Corp. manufactures similar ducks, which it purveys to defendant B. Shackman & Co., Inc., and others for resale.

In 1947, Knickerbocker, a California corporation, sued Allied, a New York corporation, in the Supreme Court of the State of New York, charging unfair competition in Allied's manufacture of the similar duck in question and asking for an injunction to stop it. Because of the diverse citizenship of the parties Allied removed the action to the United States District Court for the Southern District of New York. Plaintiff then amended its complaint to charge patent infringement as well, and additionally brought suit against Shackman in the same court on the same two charges. Both defendants denied infringement and unfair competition and counterclaimed for a declaratory judgment that the patent was invalid and void. By stipulations between the parties the two cases were tried together and were later consolidated for this appeal.

Upon trial, the District Court dismissed the first count, that for unfair competition, but on the patent issue found both infringement and validity. Defendants Allied and Shackman now appeal from an interlocutory order of November 28, 1949, which awarded plaintiff an accounting and enjoined the defendants from further manufacture, sale, and distribution of the offending ducks. Plaintiff took no appeal from the dismissal of the unfair competition count.

We think the judgment must be reversed because the patent is invalid.

We start here with a toy of pleasing design and attractive color and cost, made of the newly developed plastic material, and of undoubted commercial success. Is that enough? We must, however, come back to the originality of the design itself, for, however much the use of plastic may have contributed to this success, it concededly was not the invention of this plaintiff and is not claimed as a part of the design. As the District Court properly states: "Of course, the use of a plastic material, new in the toy field, in no way is one of the elements that would make this toy design patentable. It is not so claimed by plaintiff." The same is true of other contributing factors beyond the design.

Upon the sole issue, therefore, of the validity of the design, the pertinent statute, 35 U.S.C.A. § 73, grants protection only to a person who has "invented" a "new, original, and ornamental design for an article of manufacture." Hence as the Court of Customs and Patent Appeals has put it succinctly, In re Faustmann, 155 F.2d 388, 392, 33 C.C.P.A., Patents, 1065: "Thus it is seen that the authority for granting a

design patent is based upon four propositions—the design must be new, original, ornamental, and must be the product of invention." The court added: "In mechanical patents a combination of old elements is not invention unless there is a new and unexpected coaction between the consolidated elements producing a new result not flowing from the individual characteristics of each of the elements. Now, in a design combination such as we have at bar, if coaction between the consolidated elements is to be regarded as necessary it must flow from a new, unexpected, ornamental and pleasing appearance brought about by the putting together of the old elements."

■ So our court has held that "a design patent must be the product of 'invention,' by which we meant the same exceptional talent that is required for a mechanical patent." Nat Lewis Purses, Inc., v. Carole Bags, Inc., 2 Cir., 83 F.2d 475, 476. See also Friedley-Voshardt Co. v. Reliance Metal Spinning Co., D.C.S.D.N.Y., 238 F. 800, 801. Thus it is now too late to urge that an unstartling regrouping of old elements, which does not "rise above the commonplace" or demonstrate "originality which is born of the inventive faculty," may be called "invention" for the purposes of patent validity. Krem-Ko v. R. G. Miller & Sons, 2 Cir., 68 F.2d 872, 873; Neufeld-Furst & Co. v. Jay-Day Frocks, Inc., 2 Cir., 112 F.2d 715; Kraus v. Newman, 2 Cir., 178 F.2d 655.

■ We do not think that plaintiff demonstrated the necessary originality for a design patent here. Defendants contended that the plastic quality of the duck was responsible for its considerable success; on the other hand, plaintiff claimed that the design was the governing factor. But upon comparing this design with that of a more famous predecessor—now a household friend to Young America—the Walt Disney Donald Duck, and perhaps even more with those of Donald's three nephews, Dewey, Huey, and Louie, the claimed originality of this design quite vanishes. Plaintiff's president, who testified that he was the original licensee to manufacture and sell the Disney Donald "in plush and in plastic," discontinuing it after the fifth year because the earlier wide sales had fallen off to a point where he could no longer pay the guaranteed royalties, also testified to the considerable efforts over a period of time by his wife to produce an original design. Nevertheless so pervasive has been the original Donald that we do not think she was able to get out from his shadow. The elements relied on as original are stated in the court's finding "that said design does not approximate the natural features of a duck; that the features of the toy duck depicted by said designs are unnatural, accentuated and grotesque in appearance as indicated by the upturned, short and broad bill, bulging eyes, the shape of the body, the wing-structure and the curled-up tail." The bill, the eyes, the body, the wings, and the tail all seem —to the naked judicial eye which may well be thought to approximate that of the infant for whom these toys are made —to be pretty substantially duplicated in one or more of the four Disney ducks. Even if they were not, the Disney product had so popularized the not too unusual idea of a grotesque animal design for this particular fowl that more than this type of change would appear to be needed to show invention.

■ The district judge admitted that he was impressed by the plaintiff's sales of the toy—almost three million and a half, according to the plaintiff's president, in the summer of 1947, and over eight million from 1946 to 1949, though with a drop in sales (of undefined amount) after the August, 1947, peak. While this of course is an evidentiary factor, to be considered along with other proof, the Supreme Court has recently admonished in Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235, that the fact that a "process has enjoyed considerable commercial success, however, does not render the patent valid." High sales and continued consumer demand may tip the scales when the case is otherwise evenly balanced. Here it does not seem to us that the plaintiff came that close to proving its case.

Moreover, even had we thought this a case for resort to such props we must have found the evidence not overinformative. Gross sales in a vast country accustomed to wide distribution of manufacturing products can mean little without some showing of what would be ordinary or even desultory sales of a gay plastic duck or other bathtub toy. And even had some semblance of such a comparative yardstick been furnished, there would still remain the serious question how much a combination of successful advertising with the obvious attraction of the light and durable plastic material had caused or contributed to the outcome. Nor are we shown what the earlier growth and decline of the sales of the Disney duck over the five-year period in which the plaintiff participated meant in terms of actual figures which could be compared with those here; even were we to assume that plaintiff had given some renewed stimulus to the conception of the grotesque duck as a toy, the present apparent trend downwards would suggest the ephemeral sales life characteristic of such toys. Compare the comparable situation disclosed in Kraus v. Newman, supra.

In each case the interlocutory decree is reversed and the action is ordered dismissed.