**VACHERON & CONSTANTIN–LE COULTRE WATCHES, Inc., Appellant,**

v.

**BENRUS WATCH COMPANY, Inc., Appellee.**

No. 263, Docket 24934.

United States Court of Appeals Second Circuit.

Argued March 27 and 28, 1958.

Decided Oct. 21, 1958.

Stanton T. Lawrence, Jr., New York City, Pennie, Edmonds, Morton, Barrows & Taylor, W. Brown Morton, and Robert McKay, New York City, of counsel, for appellant.

Harold James, New York City, James & Franklin, New York City, of counsel, for appellee.

Before CLARK, Chief Judge, and HAND and LUMBARD, Circuit Judges.

HAND, Circuit Judge.

This appeal arises upon a complaint in two counts—one for the defendant's infringement of a registered copyright upon a wrist watch, and the other for infringement of Design Patent No. 178,091 upon the same watch. The complaint also contained a count for unfair competition which was dismissed, but from which the plaintiff has not appealed. The defendant moved to dismiss the copyright count because the watch was not copyrightable, and so Judge Dimock decided. Hence he found it unnecessary to hold whether § 13 of the Copyright Act, 17 U.S.C. § 13, forbade an action for infringement because the plaintiff had obtained no certificate of registration. He held the design patent valid and infringed, and summarily granted a permanent injunction against the defendant because it had put in evidence all the earlier watches on which it relied as anticipations, and he thought that he was in as good a position to determine the issue of invention as he would have been after a trial.

It is indeed true that only by an inspection of the design patent and of the actual watches put in evidence can their similarities and differences be compared; and that of course is true, not only as to the watches of the parties to the action, but as to those that the defendant put in

evidence as anticipations. We shall not try to improve upon Judge Dimock's verbal description of the plaintiff's design patent and of the defendant's alleged infringing watch. That was as follows (155 F.Supp. 933–934):

"Plaintiff's Galaxy is a wrist watch made to sell at $325. Its distinctive feature is the appearance of its face. In place of numerals there are jeweled 'sticks' of equal length and width except the stick of the six o'clock position which is shortened to permit the introduction of the name 'Le Coultre ©.' The watch has no hands in the usual sense. Instead, transparent and practically invisible rotating discs, concentric with the round face, are substituted and, at a point at the perimeter of each disc, is a round mounting containing a jewel, one mounting being smaller than the other and presumably serving as an hour 'hand' while the larger indicates the minutes. At the axis of the discs appears a polygonal metal head cut with facets like a rose-cut diamond. Inside the ends of the sticks, and concentric with the discs, there is a circle graduated into sixty minutes.

"Defendant's Elegance Constellation is made to sell at $295. In general appearance it is very similar to plaintiff's Galaxy, the difference being: (1) The sticks at the four quarter positions are the only ones that are jeweled while the others are knurled with much the same effect. (2) Instead of a short stick at six o'clock, it is at twelve o'clock and the word, 'Benrus' there appears. (3) Instead of the two round jewel holders on the invisible discs, there appears on one an arrow-shaped metallic indicator scored so that it reflects the light from two planes and on the other a triangular metallic indicator in which a jewel is mounted. (4) The head at the axis is flat and cut with a six pointed star instead of simulating a rose-cut diamond. (5) The cir-cle inside of the ends of the sticks is not graduated into minutes. (6) Instead of the conventional attachments for the wrist band which appear on plaintiff's Galaxy, the Elegance Constellation employs lugs, of a shape somewhat similar to the angular points of the jaws on a pair of pliers, which give the watch case the effect of tapering from the greatest diameter of the watch to the point where it meets the wrist band."

We first take up the copyright count. We do not think it necessary to decide whether the plaintiff's watch was copyrightable under § 5(g) of Title 17 U.S.C. which allows the copyrighting of "works of art; models or designs for works of art"; arguendo, we will assume that it was. We think, however, that even so, § 13 of Title 17 forbade any action for infringement of the copyright when the Register of Copyrights had refused, as he did, to accept the watch as copyrightable under § 5(g). It is true that the few decisions on the question leave the answer uncertain. In White-Smith Music Pub. Co. v. Goff, 1911, 187 F. 247, the First Circuit affirmed a judgment dismissing an action for infringement in which the Register had refused to register the publication; but the only question discussed either in the Circuit Court of Appeals, or in the District Court (180 F. 256), was whether the plaintiff was entitled to an extension of the original copyright, which had expired. Judge Putnam did indeed say (187 F. 247) that, "although registration was refused, yet it [the plaintiff] fully complied with the requirements of law, and is entitled to maintain this suit if it had any statutory right to the extension." So far as appears, the defendant did not raise the objection, and it was not necessary to the decision which was against the plaintiff on the merits. The quotation was at best a dictum, and we do not deem it an authoritative precedent.

The next decision was of this court in 1921 (Lumiere v. Pathé Exchange, Inc.,

275 F. 428), affirming a judgment dismissing an action for infringement, though without prejudice, because the copyright owner, the plaintiff, had deposited with the Register only one, instead of two, copies as the statute required. The point was not raised or decided whether, had the plaintiff deposited two copies and the Register refused to issue any certificate under § 209 of Title 17, the action would have succeeded. Thus this decision also did not pass upon the issue here at bar.

Bouvé v. Twentieth Century-Fox Film Corporation, 1941, 74 App.D.C. 271, 122 F.2d 51, was an appeal from a judgment of the District Court, 33 F.Supp. 462, in an action under Federal Rule of Civil Procedure 81(b), 28 U.S.C. to compel the Register to issue the certificate authorized by § 209 of Title 17. The question was whether a collection of "contributions to periodicals" was a single "book" and might be registered as such for a single fee. The Register refused to "register" the "work" except upon payment of a separate fee for each contribution, and both the District Court and the Court of Appeals held that he was subject to what, for brevity, we may still speak of as a "mandamus." In discussing the Register's powers the court said (122 F.2d at page 53) that "in light of recent trends and the divergent philosophies of different schools of thought as to what constitutes *art*, to say nothing of the large possibilities inherent in *plastic works of a scientific or technical character*, it seems obvious that, unless the Register has some power to control deposits for copyright, it may soon become necessary to build a new library annex. It seems obvious, also, that the Act establishes a wide range of selection within which discretion must be exercised by the Register in determining what he has no power to accept." It decided that his refusal was "clearly erroneous" and that the judgment of the District Court compelling him to register the "book" was correct. It is the rule in the District of Columbia as well as elsewhere that "mandamus"

should not go when another adequate remedy exists. United States ex rel. Frey v. Robertson, 1933, 61 App.D.C. 394, 63 F.2d 457; Calf Leather Tanners' Ass'n v. Morgenthau, 1935, 65 App. D.C. 93, 80 F.2d 536, 542. Therefore, the affirmance of the judgment below necessarily presupposed that no action for infringement would lie in which the question of "registration" could be decided.

In the case at bar it might be argued that the Register's decision whether the plaintiff's wrist watch was a "work of art" within § 5(g) of Title 17 involved such an exercise of discretion that "mandamus" will not go to review it. It is true that "works of art" is a loose phrase whose perimeter is hard to define; nevertheless, the decision here did not demand the exercise of a discretion that was conclusive with the Register. There were no disputed facts; and the mere fact that the meaning of the phrase, "works of art," admits of debate does not make it different from many statutes whose interpretation is every day regarded as reviewable by courts. The situation was wholly unlike that disclosed in Panama Canal Co. v. Grace Line, Inc., 1958, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788, where the court said that "the * * * conflict rages over questions that at heart involve problems of statutory construction and cost accounting" where there were "matters on which experts may disagree" (356 U.S. at page 317, 78 S.Ct. at page 757), and where "the decision to act or not to act is left to the expertise of the agency burdened with the responsibility for decision" (356 U.S. at page 318, 78 S.Ct. at page 758).

We find confirmation of our conclusion in the text of the last sentence of § 13, for it denies the right to sue for infringement "until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with," and that imports more than the mere "deposit of copies." Since the owner must submit an application and pay the required fees in

order to make a deposit, 17 U.S.C. § 202.3(b) (1952 ed. Supplement V), we can think of no other added condition for "registration" but acceptance by the Register. We therefore affirm the judgment on the first count because the plaintiff did not succeed in "registering" his wrist watch as a "work of art" under § 5(g).

■ Coming next to the design patent, we agree that Judge Dimock was justified in holding that the defendant had put in evidence all the prior art in the form of earlier disclosures and earlier watches on which it wished to rest its defense of anticipation. If validity was to be determined only by a comparison of these with the disclosure, and that was the whole of any possibly relevant evidence, it would have been proper to decide the claims summarily. However, we do not read the patent act quite so narrowly; the validity of design patents like that of all patents depends upon the general state of the industry involved. The amendment of 1952—§ 103, Title 35,—provides that "a patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." [1]

A design patent has no claims, so that it is impossible to select any specific combination of the features of the design on which alone its validity may rest; it will cover any combination of the component parts disclosed that is in fact new and was beyond the compass of a designer of ordinary skill. In the case at bar there were in the prior art "sticks" and "floaters" in combination, as for example in Gardner's clocks in 1946 (Des. Pats. 146,101 and 146,102). "Sticks," although not jewelled, were at times made of metal, and raised above, or depressed below, the face of the watch to catch the light and sparkle so as to give

somewhat the effect of a jewel (Dupertuis, Des. Pat. 129,370 (1940); Exhibit 12, Defendant's Appendix, p. 74a). Moreover, in Exhibit 22 (Jaeger, No. 257,783 (1949) ) the face of the watch, which shows only the ends of the hour and minute hands in combination with "sticks" was very close in appearance to the combination of "sticks" and "floaters" of the plaintiff's patent here. However, even though we should say that this was *pro tanto* an equivalent of a combination of "sticks" and "floaters," we do not find anywhere in the record such a combination in which these two elements were jewelled or otherwise made to sparkle.

The issue, as we view it, is what was in fact the combination that caught the taste of the public and succeeded in attracting purchasers in large number; for a design patent like this, that has no utility as such, is directed only to appearances that please the taste. Assuming that the combination of "sticks" and "floaters" was old, that of making them sparkle was not. Moreover, a number of years had passed before the patent was applied for, during which all the elements of the design were disclosed; yet this combination had not been shown. That is a situation in which it was permissible to say that since the combination had been at hand for so long and turned out to be esthetically pleasing, it was a legitimate inference that it was not obvious to those skilled in the art. Nevertheless, it seems to us that it was necessary to adduce the testimony of those so skilled as to whether in their judgment it was the combination of the three elements that constituted the attraction of the watch. Without such testimony we cannot say that the success of the watch was not due to the skill of the patentee in marketing its goods. We must therefore await a trial in which the conditions of the industry may be explored before we pass upon the issue of validity. The judgment will be reversed and the cause remanded for such a trial.

1. See Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, 536.

■ We need not discuss the defendant's further defense that it was not possible to secure both a copyright and a design patent upon the same disclosure. The Supreme Court in Mazer v. Stein, 1954, 347 U.S. 201, 74 S.Ct. 460, 98 L. Ed. 630, did, indeed, decide that the same disclosure might support a design patent and a copyright, but it expressly refused to decide whether the grant of either monopoly precluded that of the other. On the other hand in Korzybski v. Underwood & Underwood, Inc., 1929, 36 F.2d 727, we held that the grant of a patent presupposed a dedication to the public of the disclosure, except so far as the statute specifically reserved it to the patentee. Since we are holding that there was no enforceable copyright in the watch, we need not now reconsider our decision; for we do not think that a copyright which is not enforceable, even though it may be theoretically in existence, is an obstacle to securing and enforcing a patent. The doctrine of Korzybski v. Underwood & Underwood, Inc., supra, must rest upon the assumption that the owner of the statutory monopoly has some power to protect his "work," for otherwise any dedication would be without consideration.

The judgment dismissing the copyright count will be affirmed. The judgment granting a permanent injunction upon the design patent count will be reversed, and the cause remanded for trial.

LUMBARD, Circuit Judge (concurring).

■ While I agree with Judge Dimock that this is a case in which summary judgment sustaining the design patent is permissible, I concur with Judge HAND's opinion to send that part of the case back for further hearing as it is the only common denominator on which two of us can agree for disposition of the design patent cause of action.

CLARK, Chief Judge (dissenting).

This interesting case presents some novel questions which we have not been able to answer without some difference of opinion. All the judges who have passed upon the issues have substantially agreed that copying of plaintiff's watch would call for some remedial action by the court, but we have disagreed on the rationale to support this conclusion. The prevailing view to date appears to be that we should rest upon infringement of a design patent, a view which presents pitfalls and has limitations, as I shall endeavor to point out. To me the more workable, though possibly more novel, course is that of copyright infringement.

As the opinion herewith subsumes, a design patent is after all a patent, i. e., a government grant of a monopoly for a limited time for the development and exploitation of a really new contribution as the product of inventive genius—something more than "would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. We have often stressed that "it is not enough for patentability to show that a design is novel, ornamental and pleasing in appearance"; it must be "the product of invention"; "the conception of the design must require some exceptional talent beyond the range of the ordinary designer familiar with the prior art." Gold Seal Importers v. Morris White Fashions, 2 Cir., 124 F.2d 141, 142; Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir., 191 F.2d 99, 104; General Time Instruments Corp. v. United States Time Corp., 2 Cir., 165 F.2d 853, 854, certiorari denied 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770. As we know, it is difficult for things mechanical to meet this test; it is substantially more difficult for mere ornamental designs to do so. In such crowded competitive fields as that of ornamented wrist watches it would seem well-nigh impossible to produce anything which can fairly be considered new invention, or a real advance over the prior art. At the most there can be only some rearrangement of well-

known elements. Just as our standard for mechanical patents which combine known elements is high, see, e. g., Jungersen v. Baden, 2 Cir., 166 F.2d 807, affirmed 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235, so in terms of the protection afforded, it should be no less high in the case of a design patent. Knickerbocker Plastic Co. v. Allied Molding Corp., 2 Cir., 184 F.2d 652, 654. Doubtless it is because of these quite obvious difficulties that, to my knowledge, our court has never sustained a design patent challenged for lack of novelty. If this patent eventually survives, it will indeed mark the case as novel.

But for my part I do not see how this patent can possibly prevail against the prior art; there is literally nothing in it which can be considered even new. This, I think, is almost, if not quite, admitted with commendable candor in the opinion herewith, which calls the roll of some of the pertinent prior patents and shows the lack of novelty in the prior art of "sticks" and "floaters" in various combinations for clock or watch dials. The three patents cited in the opinion, those of Gardner, Dupertuis, and Jaeger, are particularly striking and —when seen in illustration more vivid than cold description—really leave nothing more to be imagined. It is urged that the use of jewels to catch the light and sparkle can be relied on as a dependable element of novelty. But this is surely incorrect. For this element appears in previous patents, indeed as early as the Blumstein Design Patent 96,642 of 1935 for a "watch dial" which used only four numerals, instead of twelve, and provided "indications" for the intermediate hours, "the indications being provided with baguette precious stones and the numerals being studded with precious stones."

Even more striking, if possible, on this point was the deposition testimony of plaintiff's experts. Thus Sadow, one of its officers, testified that before plaintiff's watch came on the market sticks were used "quite commonly," that he had seen "a great many watches with jewels on the sticks," and that jeweled sticks and individual gems had been employed in line on a stick. Schwalm, a manufacturer of watch dials, went even further to testify that "[d]iamonds on the dials in place of numbers are a common practice" for some 20 years before. Here I am attempting not a complete exposition, but only a brief summary of all the wealth of evidence disclosed of record; thus I have not by any means covered all the prior watches, such as the Swiss "Mystere," whose "intriguing sweep second" surely forestalls plaintiff's conception. About all that Sadow could claim as an advance was the profusion of diamonds, i. e., the number, appearing on his dial. How that can constitute invention is not apparent to me.

Since the lack of invention seems to me so thoroughly demonstrated, I do not perceive the occasion for or any utility in the remand for a trial. It should be noted that this was not a judgment rendered upon mere affidavits; there were before the court, in addition to the many exhibits of the prior art, three important and revealing depositions, with full examination and cross-examination—the two noted above and a third that of a vice-president of the defendant. The opinion suggests a reaching out for some means by expert or industry testimony of sustaining a patent whose weaknesses have become apparent. But a reading of these depositions shows that nothing really new or informative can be expected beyond what these gentlemen, skilled in all aspects of the business, have already told us. I venture to suggest that any of us can write out in advance and almost word for word the testimony of the new opposing experts which the remand may be expected to produce. And I suggest that in no event can such testimony gloss over or obscure what the prior art has taught us. There may well develop an amusing, if unconvincing, anomaly in that the opinion seems to seek the impossible, namely, expert evidence that commercial success here was not at all due to advertising

stimulation! But however the experts may jump on this point—and the exigencies they will face are intriguing—the earlier designs simply cannot be obliterated. The device of summary judgment should not be cloaked in pure theory, but should be viewed in purely practical settings. When it is so clear that further trial cannot add anything at all material to the process of decision, I do feel that the remand is rather an abomination to expectant litigants and harassed trial courts.

On the other hand, the copyright concept affords a different emphasis, one much more directly in point in a case such as this than the patent concept of novelty or new invention. It is that of a prohibition for a term (one longer of course than that of the patent monopoly) against direct copying. Mazer v. Stein, 347 U.S. 201, 217, 218, 74 S.Ct. 460, 98 L.Ed. 630; Alfred Bell & Co. v. Catalda Fine Arts, supra, 2 Cir., 191 F.2d 99, 101, 103.[1] Is not that the more direct issue here? The only difficulty, it seems to me, is our somewhat hidebound conception that copyright is somehow limited to writings. But this idea is now thoroughly dispelled by the Supreme Court, which in 1954 in the Mazer case upheld copyright protection of china statuettes of male and female dancing figures used as bases for fully equipped electric lamps. Justice Reed's scholarly opinion, with its detailed historical résumé, obviously gave new stimulus to the uses of copyright protection. It was the subject of extensive discussion in the law reviews, of which the comments in 39 Cornell L. Q. 725 and 68 Harv.L. Rev. 517 are perhaps representative. Already the Copyright Office had given a broad interpretation to the "works of artistic craftsmanship," such as "artistic jewelry," as covered in the Regulations, 37 CFR § 202.10(a) (formerly § 202.8), 17 U.S.C.A. following § 207;

note Justice Douglas' complaint in the Mazer case of the articles which have been copyrighted: "statuettes, book ends, clocks, lamps, door knockers, candlesticks, inkstands, chandeliers, piggy banks, sundials, salt and pepper shakers, fish bowls, casseroles, and ash trays." 347 U.S. 201, 221, 74 S.Ct. 460, 472. So in response to this precedent we have affirmed the copyright of ornamental jewelry, such as pins, bracelets, earrings, and the like, Boucher v. Du Boyes, Inc., 2 Cir., 253 F.2d 948, certiorari denied Du Boyes, Inc. v. Boucher, 357 U. S. 936, 78 S.Ct. 1384, 2 L.Ed.2d 1550; and the district court has supported the copyright of a necklace, Trifari, Krussman & Fishel, Inc. v. Charel Co., D.C. S.D.N.Y., 134 F.Supp. 551. Hence I would conclude that these highly ornamented watches were equally entitled to copyright with the ornamental lamp bases in Mazer v. Stein, supra, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630.

The opinion herewith, while assuming copyrightability for the purposes of decision, finds a technical barrier against all relief under the Copyright Act because the Register of Copyrights had refused a certificate. It should be noted that plaintiff sought registration first on September 13, 1955, and again on January 4, 1957, in each case with appropriate fee; and each time a certificate was refused by an official signing himself "Chief, Examining Division," on the ground that the work deposited was not a proper subject for registration of copyright. This was, therefore, purely a ruling of law which was erroneous and beyond the authority of the official making it. For reasons which I shall advance I doubt if the ministerial grant of a certificate is a condition precedent to a suit for copyright; but however this question is answered, it seems to me clear that a plaintiff situated as is this one is entitled to at least interim relief

[1]. What Judge Frank has characterized as the "far less exacting standards in the case of copyrights" imposed by Congress, Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir., 191 F.2d 99, 101, and the judicial response thereto, is said to have caused "both wonder and complaint, particularly among patent attorneys." Note, 68 Harv.L.Rev. 517, 524, n. 57, and citations there given.

against a defendant wrongdoer over whom the court has obtained jurisdiction. The plaintiff should at any rate have an injunction preventing further wrongdoing until it is able to seek mandamus against the Register in the District of Columbia. This act of simple justice—in view of the nature of copyright and the supplemental relief admittedly allowable on registration—would seem to me so clearly an obligation of a court of equity that most of the discussion of copyright in the opinion I find not immediately pertinent. But in view of its importance, as well as its bearing on the grant of either intermediate or final relief, I shall now discuss the issue of possible fetters upon suit for copyright infringement.

The question arises because in 17 U. S.C. § 13, at the end of a substantial and detailed direction for prompt deposit of copies with the Register, aimed specifically at a copyright owner with right already secured by appropriate publication, there is a concluding sentence providing that no action for copyright infringement shall be maintained "until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with." Quite obviously this puts the condition of complying with the law, including the deposit of copies, upon the copyright owner before he sues, though, under the case law cited below, it does not prevent or destroy the earlier accruing of a *right* to damages or profits. Here the plaintiff has complied with the requirements put upon it, and the only question is whether it must also assume the risk of waiting—perhaps until its right is lost by limitation[2] or otherwise —until the Register has performed his statutory duties. So to conclude is to read this serious prohibition into the single word "registration," thus giving it a meaning which not merely is not required, but is actually belied by both

the immediate context and the general statutory scheme of copyright.

At the outset we should have in mind the distinction at times overlooked between copyrights and patents and between the respective duties and authorities of the Register of Copyrights and the Commissioner of Patents. A patent is a governmental *grant,* made by the Commissioner after careful examination and in the exercise of important quasi-judicial functions, 35 U.S.C. §§ 131–135, with intramural appeal, 35 U.S.C. § 134, and ultimate appeal to the courts, 35 U.S.C. §§ 141–146 —all as strictly provided by law.[3] But beginning with the way in which copyright is obtained, the entire scheme of the Copyright Act is altogether different. Sec. 10 of 17 U.S.C. sets the tone by providing that copyright of a work is secured "by publication thereof with the notice of copyright required by this title." That is all a defendant ever has to know to be on notice of plaintiff's right. After copyright has been thus secured, the applicant is directed to deposit two copies in the Copyright Office, together with a claim of copyright, 17 U.S.C. § 13; this claim is made on an appropriate form, with statutory registration fee, 37 CFR § 202.3; the Register makes appropriate entry in his book, 17 U.S.C. § 208; and the person recorded as the claimant is entitled to a certificate of registration, 17 U.S.C. § 209. Note that 17 U.S.C. § 13 says nothing about the necessity for purposes of suit of this certificate, so fully described in purpose and effect in § 209. The whole implication throughout is that the Register must carry out the provisions of the law and has no judicial or discretionary functions such as has the Commissioner of Patents. True, there have been occasional attempts to find some area of discretion for the Register, as in Bouvé v. Twentieth Century-Fox Film Corp., 74 App.D.C. 271, 122 F.2d 51;

2. Formerly subject to state law, but now limited by federal statute to three years. 17 U.S.C. § 115(b) as amended; 1957 U.S.Code Cong. & Adm.News 1961–1966.

3. The powers and duties of the Commissioner of Patents as to trade-marks are similar. 15 U.S.C. §§ 1062–1072, 1091–1094.

yet, as that case itself demonstrated, the ultimate conclusion has to be that it is his duty to obey the law and that mandamus will issue to require him to do so.[4]

Hence the one clear decision on the point says and holds: "and, although registration was refused, yet it [complainant] fully complied with the requirements of law, and is entitled to maintain this suit if it had any statutory right to the extension [of the copyright]." White-Smith Music Pub. Co. v. Goff, 1 Cir., 187 F. 247. This is very clearly decision and not dicta, both from its form of expression and from the fact that, once the right to sue was settled, adjudication was then made on the merits. Moreover, while Washingtonian Pub. Co. v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470—reversing the restrictive decision below, Pearson v. Washingtonian Pub. Co., 68 App.D.C. 373, 98 F.2d 245—is not explicit on our present issue, its holding and discussion certainly tend in the same direction. It held that the right to sue under the Act for infringement is not lost by mere delay in depositing copies of the copyrighted work, a delay there of fourteen months after the date of publication and six months after the infringement. Thus the Court says, for example: " * * * proper publication gives notice to all the world that immediate copyright exists. One charged with such notice is not injured by mere failure to deposit copies. The duty not to infringe is unaffected thereby. A certificate of registration * * * apparently may be obtained at any time and becomes evidence of the facts stated therein." 306 U.S. 30, 40–41, 59 S.Ct. 397, 402.

Against this reasoning only this Circuit is cited as opposed; but even here the authority cited does not bear this out. In Lumiere v. Pathé Exchange, 2 Cir., 275 F. 428, where a suit was dismissed *without prejudice*, the court actually held that plaintiff had failed to take the proper steps; he had failed to file a proper registration *after* publication, and his first registration to claim copyright in an unpublished work did not carry over after publication. Hence it does not cover our case. Note, too, that the majority (following L. Hand, J., below) held that the right to sue was not lost, but only postponed until proper registration—the view later accepted in Washingtonian Pub. Co. v. Pearson, supra, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470. So, two district judges have followed what they thought was the decision to hold suit merely postponed: Knox, J., in Rosedale v. News Syndicate Co., D.C.S.D.N.Y., 39 F.Supp. 357, and Noonan, J., in Algonquin Music, Inc. v. Mills Music, Inc., D.C.S.D.N.Y., 93 F. Supp. 268. (The only other case brought up, United States v. Backer, 2 Cir., 134 F.2d 533, dealt only with the question of the applicant's compliance with the statutory requirements.) In the Rosedale case Knox, J., says that he would properly accept the claim after formal registration by way of supplemental complaint. This eminently correct procedure points the way to clearly permissible procedure here; for we should at least direct the district court to hold this case, continuing the injunction, until plaintiff could persuade the Register to comply with the law and could then file a supplemental complaint, F.R.Civ. P., rule 15(d). No other way would fairly give the plaintiff the protection which the law has designed for it. But I add, Why go through all this crisscross, this unnecessary and delaying confusion of suits, when White-Smith Music Pub. Co. v. Goff, supra, 1 Cir., 187 F. 247, defines the simple and direct course?

Hence I would continue the injunctive relief granted by Judge Dimock below,

---

4. The suggestion in the opinion that the existence of this undoubted right of action against the Register in the District of Columbia somehow necessarily precludes a right of action for infringement must, I submit with deference, be error. Involved are necessary, important, and nonoverlapping rights against different defendants.

but on quite different grounds and to a quite different end than he has asserted in his opinion, D.C.S.D.N.Y., 155 F.Supp. 932.