KONO MFG. CO. v. VOGUE OPTICAL
MFG. CO., Inc.

United States District Court
S. D. New York.

Dec. 15, 1950.

Joseph Hirschman, New York City, for plaintiff.

Irving Seidman, New York City, for defendant.

IRVING R. KAUFMAN, District Judge.

This action is for an injunction and damages for infringement of plaintiff's Design Patent No. 146,224 relating to a spectacle frame.

The plaintiff is a co-partnership composed of Alexander Kono, Blanche Kono and Florence Smith and is a manufacturer of spectacle frames. On May 1, 1946 Alexander Kono filed an application with the Commissioner of Patents for the grant of Design Letters Patent upon the spectacle frame design which is the subject of this suit. Prior to issuance of the Design Patent, the rights to the design were transferred to the plaintiff. Some question was raised at the trial as to the execution in writing of an assignment of

the design to the plaintiff, since the assignment appears to have been lost, but such execution was proved to the satisfaction of the Court by the testimony as to execution and diligent search for the missing papers by Alexander Kono and by his and the plaintiff's attorney at the time of said execution, and also by the Patent Office records. See Wayne Mfg. Co. v. Benbow-Brammer Mfg. Co., 8 Cir.1909, 168 F. 271, 273–274. Suffice it to say, the defendant's counsel stated he would not press his contention regarding the assignment after hearing the testimony concerning the execution and filing of and search for the assignment.

The patent was issued to the plaintiff on January 14, 1947. The design is of a harlequin-type spectacle frame for women. The claim, set forth in general language, which is the practice, is as to an "ornamental design for a spectacle frame" and the essential feature of the design is alleged to be "the specific configuration of the frame."

Apparently the distinguishing feature of plaintiff's frame is the provision of an undulating or sinuous outline to the outer margins or edges of the eyeglass frames, that is, at the outer edge of the portion of the frame on both the left and right hand sides there are curves or "bumps" or "scallops" immediately below and flowing into the region where the temple bars are attached to the frame.

Plaintiff commenced sale in 1946 of a frame which resembled the design patent frame, with modifications, and this frame, known as the Hussy met with immediate commercial success and accounted for approximately 60% of plaintiff's total output soon after production was commenced.

Before long, competitors commenced producing frames similar to the Hussy and undersold the plaintiff. The plaintiff's sales of the Hussy dropped considerably and now amount to less than 10% of plaintiff's production. To meet the competition the plaintiff subsequently produced a lower cost model of the Hussy known as the Hussette. Plaintiff also brought suit against

several alleged infringers, two of which suits terminated in consent judgments and the issuance of injunctions. Kono Mfg. Co. v. Ace Optical Mfg. Co.[1] Civ. #45-578 (S.D.N.Y.); Kono Mfg. Co. v. Willoughby Optical Co.,[1] Civ. #C-9413 (E.D. N.Y.).

This suit is against another alleged infringer, the Vogue Optical Co., Inc. The defendant is a manufacturer of spectacle frames and has marketed for the past two years (but prior to the marketing of the Hussette frame) a frame known as the Samba which has the sinuous lines or "bumps" in a harlequin-type woman's frame similar to plaintiff's design patent and similar to the Hussy and Hussette frames.

■ The test of infringement involves two considerations: first, the substantial sameness of effect of the two objects in question upon the eye of an ordinary purchaser, reasonably familiar with the objects in question, such as to deceive him, inducing him to purchase one, supposing it to be the other, and secondly, the alleged infringing device must appropriate the novelty in the patented device which distinguishes it from the prior art. Sears, Roebuck & Co. v. Talge, 8 Cir. 1944, 140 F.2d 395; Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 6 Cir. 1933, 67 F.2d 428.

■ Applying the second test first, defendant's Samba frame did appropriate the novelty in the plaintiff's design patent, which is the "bumps" or "scallops" on the outer rim of the frame. Plaintiff does not claim that anything more was novel on the frame than the placing of sinuous lines on the upsweep type of frame (which upsweep type of frame was itself previously well known to the trade).

James Devlin, a witness for the defendant, testified that he had manufactured the cutting dies for the Hussy frame and that in response to a request from the defendant to make a frame design that would have the effect of removing the thickness on the side of an upsweep type of frame, he had on his own initiative imitated the

1. No opinion for publication.

Hussy "bumps" by combining them with an upsweep type of frame known as the Socialite frame which defendant had put on the market in 1945. Hence it is evident that the novelty in plaintiff's frame was appropriated by the defendant, despite Devlin's testimony that he did not copy the Hussy "bumps" or have the Hussy frame before him when he devised defendant's frame.

Furthermore there is little doubt but that an ordinary observer could not be expected to distinguish between defendant's frame and plaintiff's design patent, for the differences between the two are inconsequential, and there is additional evidence in this case that dealers in spectacle frames had returned defective frames of the defendant to the plaintiff, for repairs or exchange, believing the frames to have been manufactured by the plaintiff.

█ The infringement being clear, I must pass on to the consideration of the validity of plaintiff's design patent. Harries v. Air King Products Co., 2 Cir. 1950, 183 F.2d 158. The design patent issued to the plaintiff does not make any specific claim that the essential and novel feature is the "bumps" or sinuous lines. This raises the question of whether every element of the design is essential or whether the design can be broken down into its elements and only the novel elements considered. Since the practice with design patents is to make general rather than specific claims, I will accept the view stated by the Court of Appeals for this Circuit in the case of Rowley v. Tresenberg, 1941, 123 F.2d 844, 845 that "the grant really amounts to no more than saying that the patent lurks somewhere among the possible combinations which will fit upon the disclosure." See Levoy v. Styl-Rite Optical Corp., D.C. E.D.N.Y. 1949, 88 F.Supp. 497, 500, footnote 6, affirmed 2 Cir. 1950, 185 F.2d 240.

The question is therefore presented whether plaintiff has a valid design patent on its use of a series of sinuous lines or "bumps" in a spectacle frame. The relevant patent statute, 35 U.S.C.A. § 73, grants protection in the form of a monopoly to a person who has "invented" a "new, original, and ornamental design for an article of manufacture."

█ The Court of Appeals for the Second Circuit has recently spoken on the requirements for obtaining a design patent. In the case of Knickerbocker Plastic Co. v. Allied Molding Corp., 184 F.2d 652, 653, it was said that "the authority for granting a design patent is based upon four propositions—the design must be new, original, ornamental, and must be the product of invention" and that the product of invention means "the same exceptional talent that is required for a mechanical patent."

█ It is not enough that the design be merely new, ornamental or pleasing to the eye. Nat Lewis Purses v. Carole Bags, 2 Cir. 1936, 83 F.2d 475. The design must reveal a greater skill than that exercised by the ordinary designer who is chargeable with knowledge of the prior art. General Time Instrument Corp. v. United States Time Corp., 2 Cir. 1948, 165 F.2d 853, certiorari denied, 1948, 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770.

The Supreme Court most recently expressed its views on the subject of invention in patents with great clarity. In the case of Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U. S. 147, 71 S.Ct. 127, 131, the Court, in denying the patentability of a mechanical device because it was a mere aggregate of known elements, emphasized the high standard of invention required to obtain a patent. Mr. Justice Douglas in his concurring opinion stated that the grant to Congress in Article I, Section 8 of the Constitution of power to permit patents to be issued was for the purpose of promoting the progress of science and useful arts. He pointed out that: "Every patent is the grant of a privilege of exacting tolls from the public. The Framers plainly did not want those monopolies freely granted. * * * (T)hrough the years the opinions of the Court commonly have taken 'inventive genius' as the test".

He emphasized that the Patent Office has too frequently departed from the Constitutional standards which are supposed to govern the granting of patents.

254

■ As stated before, the only portion of plaintiff's patent that has novelty is the "bumps" or "scallops" in the combination appearing on the frame. The upsweep type of frame is concededly not new, nor is the keyhole bridge or temple bars used in plaintiff's design. As Devlin testified defendant's frame was made by merely adding plaintiff's curved lines (with minor variations) to a Socialite frame, and plaintiff makes no claim to the Socialite frame.

Defendant's Exhibit C in evidence lists and illustrates the prior anticipatory art on the subject of "bumps". The L. Jacobson Patent No. 136,047 issued on July 27, 1943 has four "bumps" or curves or "scallops" on the top rim of the frame (including the bridge). The F. H. Fisher patent No. 127,791 issued June 17, 1941 has one large "bump" on each side of an upsweep type of frame in the approximate position of plaintiff's "bumps". The Fisher design also has three very small "bumps" or "scallops" on both left and right corners of the frame at the top. The A. M. Levy patent No. 136,-203 dated August 24, 1943, has eight "bumps"—four along the top of the frame and four along the bottom rim. The E. W. Smith, Jr. patent No. 131,671 issued March 17, 1942 has two "bumps" on the bottom of the bridge. These designs, plus others—notably the J. Bendix patent No. 136,405 (September 28, 1943), the J. Bobrow patent No. 69,435 (February 16, 1926), and the E. Pappert patent No. 73,144 (July 26, 1927)—all have "bumps" of one shape or another on the rim of the frame. True, these "bumps" were not all of the same rounded shape as plaintiffs nor were they in the same combination or arrangement as that utilized by plaintiff;—nevertheless "bumps" or "scallops" were previously used to make spectacle frames more pleasing to the eye—or, at least, that was the purpose.

■ Since these prior "bumps" date back to 1926, it cannot be said that plaintiff's "bumps" were the result of a divine flash or the result of the inventive genius of Alexander Kono. While it is true that plaintiff's design is very artistic and pleasing, the design is the product of a skilled craftsman rather than the product of inventive genius necessary for a patent, cf. Levoy v. Styl-Rite Optical Corp., supra; any craftsman of ordinary skill in this field, constantly mindful of improving the appearance to the eye of ladies' frames, would in due time devise a frame either exactly like plaintiff's or one that would contain the pleasing-to-the-eye features in plaintiff's frame. There was nothing startling about plaintiff's "series of curves" nor did it show any "inventive genius". The commercial success of plaintiff's design without the added ingredient of invention does not make the design patentable. Great Atlantic & Pacific Co. v. Supermarket Corp., supra; Levoy v. Styl-Rite Optical Corp., supra, 88 F.Supp. at page 502.

I therefore conclude that plaintiff's design patent No. 146,224 is invalid for want of invention, and direct a decree in favor of the defendant.